**Eleanor HOLM, Plaintiff-Appellant,**

v.

**Morris SHILENSKY, Arthur Cantor and Charles Wohlstetter, as Executors of the Estate of Billy Rose, Deceased, Defendants-Appellees.**

No. 121, Docket 31546.

United States Court of Appeals
Second Circuit.

Argued Oct. 20, 1967.

Decided Jan. 5, 1968.

Heilbron, New York City, for defendants-appellees.

Before WATERMAN, MOORE and HAYS, Circuit Judges.

WATERMAN, Circuit Judge.

Appellant brought her action for money damages in the United States District Court for the Southern District of New York against the appellees, the executors of the Estate of Billy Rose, alleging, in five causes of action, that prior to the execution of a separation agreement entered into between appellant and Rose, Rose, her then husband, fraudulently misrepresented to her that two paintings received and accepted by her as part of a property settlement between them were genuine Renoir paintings worth approximately one million dollars and by this means had induced her to execute the property settlement agreement. Alternatively, in a sixth cause of action, appellant sought money damages, alleging that there had been a mutual mistake regarding the value of the paintings. The appellees denied liability in their answer and additionally pleaded seven affirmative defenses, which are set forth and discussed in the opinion of the learned court below, reported at 269 F.Supp. 359 (1967).

The appellant moved to strike the affirmative defenses and the appellees countered with a motion for summary judgment. The court granted the summary judgment motion, supra at 365. We affirm.

Eleanor Holm and Billy Rose were married on November 14, 1939. On December 28, 1953 they executed a separation agreement. The property settlement portion of this agreement included provision for the division of personal property maintained at the marital residence, and included the renunciation and relinquishment by Rose of whatever right, title or interest he may have had in two paintings, a "Nude in manner of Renoir—oil painting" and a "Small Renoir—oil painting"—it being agreed that these were to remain the sole and

Murray L. Lewis, Harry H. Lipsig, New York City, Sinclair, Barfield & Louis, Miami, Fla., for plaintiff-appellant.

James R. Cherry, Osmond K. Fraenkel, Irwin Karp, Hays, St. John, Abramson &

exclusive property of Eleanor.[1] A decree of separation was entered in the New York Supreme Court on January 6, 1954; thereafter, appellant established residence in Clark County, Nevada, filed a complaint, and obtained a divorce decree there on February 27, 1954, her husband having appeared in the Nevada action by attorney. Both decrees incorporated the terms of the separation agreement executed by the parties. Thereafter, appellant discovered that the two paintings were not genuine Renoirs but were the work of some unknown artist, and commenced this action in the district court. The jurisdiction of the court below was based on diversity of citizenship, 28 U.S.C. § 1332, appellant being a citizen of Florida and all appellees being citizens of New York.[2]

Without commenting at all upon the merits of appellant's fraud complaint, we turn our attention immediately to appellees' defense predicated upon the finality which must be accorded the Nevada divorce decree, for we believe this defense is dispositive of this case. The divorce decree is a final decree, Nevada Rev. Stats. § 125.130(1); it is elementary that, under the Full Faith and Credit Clause of the U. S. Constitution, U.S. Const. Art. IV, § 1, and also under 28 U.S.C. § 1738, a final decree of divorce rendered in one state "should have the same credit, validity and effect, in every other court in the United States, which it had in the State where it was pronounced," Hampton v. M'Connel, 16 U.S. (3 Wheat.) 234, 235, 4 L.Ed. 378 (1818) (Marshall, C. J.), as long as the jurisdictional facts, including domicile, are validly established whenever the decree is questioned. Williams v. State of North Carolina, 317 U.S. 287, 293–294, 63 S.Ct. 207, 87 L.Ed. 279 (1942). See also Alton v. Alton, 347 U.S. 610, 74 S.Ct. 736, 98 L.Ed. 987 (1954) (per curiam); Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed.

---

1. The paintings were included within Schedule "D" of the separation agreement. The pertinent portion of the subparagraph of the agreement reads as follows:

> The parties further agree that all furniture, furnishings, household effects and other articles located at 33 Beekman Place, New York City, as at December 15, 1953, shall, except for the articles listed or described in Schedule "D" annexed hereto, constitute and remain the sole and exclusive property of the Husband and shall be surrendered to him, it being agreed that the articles listed or described in Schedule "D" shall be retained by the Wife and shall constitute and remain the sole and exclusive property of the Wife. The Wife hereby renounces and relinquishes whatever right, title and interest she may have in the furniture, furnishings, household effects and other articles not listed or described in Schedule "D" annexed hereto, and the Husband renounces and relinquishes whatever right, title and interest he may have in the articles listed or described in said Schedule "D."

2. This is one of those peculiar diversity cases in which "federal" law must be applied on some issues and state law on others. Thus, any questions arising out of the state-created right to recovery for fraud, as that of ascertaining the proper measure of damages, must be determined according to state law under the rule of Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). On the other hand, questions which involve federally-created rights and duties, such as that of the applicability and effect of the Full Faith and Credit Clause, must be determined as a matter of and according to federal law. Sutton v. Leib, 342 U.S. 402, 72 S.Ct. 398, 96 L.Ed. 448 (1952); see generally 1A Moore, Federal Practice ¶0.311[2] (2d ed. 1965).

We make this observation only because our almost exclusive reliance upon New York authority might disturb those of academic bent. We deem it proper in this particular case to rely upon New York authority as to questions arising from the application of the Full Faith and Credit Clause of the U. S. Constitution because: (1) the New York courts, pursuant to the Supremacy Clause of the Constitution, U.S.Const. Art. VI, are bound to apply federal law whenever they must apply the Full Faith and Credit Clause; (2) we believe the New York decisions applying the federal Full Faith and Credit Clause relied upon in this opinion have been faithful to the construction of that clause adopted by the U. S. Supreme Court; (3) the New York decisions go more deeply into the problem before us than any existing federal authority does.

26 (1938) ; compare Williams v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). Appellant concedes that no attack is being made upon the Nevada court's jurisdiction in the instant case.

■ It should be observed that, under Nevada law, when in adjudication in a divorce action a previously-executed separation agreement is ratified, adopted, or approved by the court by reference thereto, the decree or judgment rendered by the court has the same force and effect and legal consequences as if the separation agreement were copied into or attached to the divorce decree. Nevada Rev.Stats. § 123.080(4) ; see Ballin v. Ballin, 78 Nev. 224, 371 P.2d 32 (1962) (section applies to property settlement agreements as well as support and maintenance agreements). Moreover, the New York courts, pursuant to the Full Faith and Credit Clause, have given such an effect to separation agreements incorporated into sister-state divorce decrees, see e. g., Graham v. Hunter, 266 App. Div. 576, 42 N.Y.S.2d 717 (1st Dept. 1943) ; Pforr v. Pforr, 227 N.Y.S.2d 728 (Sup.Ct. Nassau Co. 1962) ; Ciatto v. Ciatto, 29 Misc.2d 158, 218 N.Y.S.2d 690 (Sup.Ct. Albany Co. 1961) ; Crane v. Crane, 199 Misc. 980, 105 N.Y.S.2d 806 (Sup.Ct. N.Y. Co. 1951), aff'd without opinion, 281 App.Div. 671, 117 N.Y.S. 2d 687 (1st Dept. 1952) ; Rudolph v. Rudolph, 66 N.Y.S.2d 274 (Sup.Ct. N.Y. Co. 1946) ; In re MacGregor's Estate, 168 Misc. 557, 6 N.Y.S.2d 280 (Surr.Ct. N.Y. Co. 1938), even where the sister-state divorce decree provided, as did the decree in this present case, that the separation agreement shall survive the decree, see, e. g., Temple v. Liebmann, 17 Misc.2d 740, 186 N.Y.S.2d 533 (Sup.Ct. N.Y. Co.), aff'd without opinion, 9 A.D.2d 664, 192 N.Y.S.2d 484 (1st Dept. 1959), appeal

dismissed, 7 N.Y.2d 1049, 200 N.Y.S.2d 436, 167 N.E.2d 82 (1960) (mem. decision) ; Schreck v. Schreck, 205 Misc. 703, 128 N.Y.S.2d 840 (Sup.Ct. Queens Co. 1954) ; In re Kendall, 30 Misc.2d 607, 126 N.Y.S.2d 684 (Sup.Ct. Suffolk Co. 1953) ; Lipscomb v. Lipscomb, 179 Misc. 1025, 40 N.Y.S.2d 720 (Sup.Ct. Monroe Co. 1943).

■ However, the divorce decree need be given only as much credit as it is accorded in the rendering state, so that if it is modifiable on certain grounds in the rendering state it is modifiable on the same grounds in any other state. People of State of New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947). A Nevada divorce court's adjudication of property rights is modifiable if the decree itself provides that it is modifiable, or if both parties to the divorce present to the court a signed and acknowledged stipulation of modification. Nevada Rev.Stats. § 125.150; see Krick v. Krick, 76 Nev. 52, 348 P.2d 752 (1960). Neither of these conditions is satisfied in the present case. Thus, if this be a proper case for the invocation by the appellees of the Full Faith and Credit Clause, we would not be able to modify the Nevada decree, for the Nevada court, were it to be faced with the case in its present form, would be powerless to render the relief requested.

■ We come now to the pivotal question in this case, whether there would be, in effect, a refusal to give full faith and credit to the Nevada decree if appellant were able to prosecute her fraud action to a successful conclusion; i. e., would a judgment for appellant upon trial impair the Nevada decree? We believe it would.

■■ In four of her five causes of action for damages based on fraud and in her cause of action for damages based on mutual mistake,[3] appellant would com-

3. An alternative and perhaps stronger ground exists for affirming this grant of summary judgment to appellees regarding this sixth cause of action (mutual mistake) only. In New York (and in general, too) the only remedies available in an action based on mutual mistake are the equitable ones of rescission or refor-

mation; to allow damages in such an action would be to apportion blame in a situation in which it is assumed that neither party has wronged the other. Sheridan Drive-In, Inc. v. State, 16 A.D.2d 400, 407, 228 N.Y.S.2d 576, 584 (4 Dept. 1962).

pute the amount of her damages by subtracting the actual value of the paintings ($10,000) from the represented value of the paintings ($1,000,000). However, the cases show that in New York the proper measure of damages in a fraud and deceit action is the difference between the value of the right given up by plaintiff and the value of the property received.[4] See, e. g., Reno v. Bull, 226 N.Y. 546, 124 N.E. 144 (1919); Bernstein v. Wittner, 266 App.Div. 978, 44 N.Y.S.2d 357 (2d Dept. 1943); Majestic Export Co. v. Katz & Greenfield, Inc., 248 App.Div. 205, 288 N.Y.S. 941 (1st Dept. 1936) (per curiam). Thus, in order properly to compute damages under these five causes of action the district court would have to second-guess the Nevada divorce court by determining whether the Nevada court would have provided a different property settlement arrangement if the true worth of the paintings were known at the time of the decree, and, if so, to what extent it would have been different. This clearly would be an impairment of the Nevada decree. Weintraub v. Weintraub, 302 N.Y. 104, 96 N.E.2d 724 (1951); Matthews v. Dench, 279 App.Div. 866, 110 N.Y.S.2d 908 (1st Dept. 1952) (mem. decision); Calderon v. Calderon, 275 App.Div. 251, 88 N.Y.S.2d 886 (1st Dept. 1949); Waters v. Waters, 95 N.Y.S.2d 92 (Sup.Ct. Queens Co. 1949), aff'd 276 App.Div. 923, 94 N.Y.S.2d 830 (2d Dept. 1950). See generally Annotation, 32 A.L.R.2d 1145–59 (1953); cf. Rehill v. Rehill, 306 N.Y. 126, 116 N.E.2d 281 (1953); Schacht v. Schacht, 295 N.Y. 439, 68 N.E.2d 433 (1946); Klotz v. Klotz, 17 A.D.2d 800, 232 N.Y.S.2d 753 (1st Dept. 1962) (per curiam); In re Jiranek, 267 App.Div. 607, 47 N.Y.S.2d 625 (2d Dept. 1944); In re McKay's Will, 137 N.Y.S.2d 455 (Surr.Ct. Nassau Co. 1954), aff'd 1 App.Div.2d 693, 147 N.Y.S.2d 482 (2d Dept. 1955).

The same basic reasoning applies to appellant's first cause of action in which she seeks damages of $15,000,000, evidently the value she places upon the right she would have possessed upon Rose's death, as his surviving spouse, to elect against his will, which right she relinquished when she signed the separation agreement. Here the district court would have to prognosticate what support and maintenance provisions the divorce court would have made for appellant in the absence of a separation agreement. The courts in both Weintraub v. Weintraub, supra, and Matthews v. Dench, supra, quite explicitly pointed out that this would constitute an impairment of the Nevada decree.

Having thus found the binding effect in New York of the Nevada decree to be dispositive, we need not consider the other defenses raised by appellees, such as the statute of limitations and the merger clause contained in the separation agreement. We find it sufficient to agree with the sentiment expressed in Temple v. Liebmann, supra, namely, "Who wars with wedlock, writhes with wounds; and * * * [petitioner's] relief, if any, may be sought only in the courts of Nevada." 17 Misc.2d 740 at 743, 186 N.Y.S.2d 533 at 537. See also Calderon v. Calderon, supra; Hoyt v. Hoyt, 265 App.Div. 223, 38 N.Y.S.2d 312 (1st Dept. 1942), appealed dismissed, 290 N.Y. 931, 48 N.E.2d 714, 265 App.Div. 1000, 39 N.Y.S.2d 1000 (1943) (mem. decision); In re Kendall, supra; In re MacGregor's Estate, supra.

■ There being no issue of fact, as that term is used in Fed.R.Civ.P. 56(c), concerning the defense we have found to be dispositive of this case, the lower court's grant of summary judgment for appellees is affirmed.

---

4. The fact that appellant has alleged an incorrect measure of damages is not enough, in itself, to justify granting appellees' motion for summary judgment, because, in New York, when a cause of action contains all the allegations essential for fraud in the inducement, the fact that the measure of damages sought may have been an improper measure does not invalidate the cause of action itself. Towers Realty Corp. v. Fox, 278 App.Div. 74, 103 N.Y.S.2d 437 (1 Dept. 1951).