**Einer NELSON and Olga Nelson,
Plaintiffs,**

v.

**Violet Mae DUBOIS, Defendant.**

**Civ. No. 9047.**

Supreme Court of North Dakota.

July 10, 1975.

Kenneth M. Moran, Jamestown, for plaintiffs.

Robert P. Brady, Asst. Atty. Gen., Bismarck, for defendant.

PAULSON, Judge.

This case comes to us upon the certification of certain questions of law by the Benson County District Court.

On December 31, 1971, a motor vehicle collision occurred on North Dakota Highway 57 within the exterior boundaries of the Fort Totten Indian Reservation, between the plaintiffs, Einer and Olga Nelson, and the defendant's son, Edwin Charles Dubois. An action was commenced by the Nelsons against the Estate of Edwin Charles Dubois, but was voluntarily dismissed. Suit was then commenced against the defendant, Violet Mae Dubois, as owner of the vehicle driven by Edwin Charles Dubois, under the family purpose doctrine. At all times pertinent to this action, Violet Mae Dubois was an enrolled member of the Turtle Mountain Band of Chippewa Indians and was residing on the Fort Totten Reservation.

On June 20, 1973, Mrs. Dubois signed a document entitled "Consent to Civil Jurisdiction" in which she consented as to all matters to the civil jurisdiction of the state courts of North Dakota. Thereafter, the Nelsons obtained a default judgment against Mrs. Dubois and, on July 20, 1973, Notice of Default was served upon the North Dakota Highway Commissioner and the North Dakota Attorney General to initiate action against the Unsatisfied Judgment Fund.

Counsel for the Unsatisfied Judgment Fund, appearing for Mrs. Dubois, moved to dismiss this action for lack of jurisdiction on the grounds that Mrs. Dubois is an enrolled member of an Indian tribe residing on the Fort Totten Indian Reservation. This motion was denied by Judge James H. O'Keefe, of the Second Judicial District, but renewal of the motion was allowed by Judge O'Keefe's successor in this action, Judge Ray R. Friederich. Judge Friederich concluded that the issue of the state court's jurisdiction would be determinative of the action and, finding that the issue of jurisdiction was in doubt, certified the following questions to this court:

1. Is § 27–19–05, N.D.C.C., valid under the Supremacy Clause of the United States Constitution and pursuant to Public Law 90–284, 25 U.S.C. § 1322?

2. If § 27–19–05, N.D.C.C., is valid, does the District Court of Benson County acquire jurisdiction over a claim for relief, which arose prior to the date of execution of the individual acceptance statement?

Section 27–19–05, N.D.C.C., provides:

"*Individual acceptance.*—An individual Indian may accept state jurisdiction as to himself and his property by executing a statement consenting to and declaring himself and his property to be subject to state civil jurisdiction as herein provided. Such jurisdiction shall become effective on the date of execution of such statement. The statement accepting state jurisdiction shall be filed in the office of the county auditor of the county in which the person resides and when so filed shall be conclusive evidence of acceptance of state civil jurisdiction as provided herein."

Subsequent to the initial certification of questions in this case, the Eighth Circuit Court of Appeals decided the case of *Poitra v. Demarrias,* 502 F.2d 23 (8th Cir. 1974),

and this court decided the case of *Rolette County v. Eltobgi*, 221 N.W.2d 645 (N.D. 1974). These two opinions contained language that was thought to bear upon this action and, in light of *Poitra* and *Eltobgi*, the district court made supplemental findings of fact and conclusions of law, and certified an additional question to this Court:

## "SUPPLEMENTAL FINDINGS OF FACT

"11. Neither Plaintiff is an Indian.

"12. The amount in controversy in this suit exceeds $300.00.

"13. Neither Plaintiff is a resident of the Fort Totten Indian Reservation in North Dakota.

"14. Neither Plaintiff has done business on said Fort Totten Indian Reservation for at least one year prior to the institution of these proceedings.

## "SUPPLEMENTAL CONCLUSIONS OF LAW

"The Code of Laws of the Devils Lake Sioux Tribe of the Fort Totten Indian Reservation of North Dakota provides as follows:

"*Chapter I, Section 1.2(c)*: 'The court shall have jurisdiction (1) over all civil matters where all parties are Indians within the jurisdiction of the court, and (2) over all civil proceedings brought by a non-Indian, resident or doing business on the reservation for at least one year prior to the institution of the proceedings, against an Indian within the jurisdiction of the court, where the amount or value in controversy, including interest, does not exceed $300.00.'

"*Chapter VIII, Section 8.1(a)*: 'No person shall drive a motor vehicle on the public highways without a valid driver's or chauffeur's license.'

"*Chapter VIII, Section 8.3*: 'No person shall operate a motor vehicle on the roadways within the Reservation unless such vehicle is in safe condition and complies with the registration laws of the state.'

## "SUPPLEMENTAL CERTIFICATION OF QUESTIONS TO THE SUPREME COURT

"Does the district court have residuary jurisdiction over this case?"

The district court concluded that it had no jurisdiction to hear this action and answered the three questions certified to us in the negative.

■ Except to the extent that this action differs factually from *Gourneau v. Smith*, 207 N.W.2d 256 (N.D.1973), our decision today is governed by our holding in that case. In *Gourneau* we held that the state courts of North Dakota had no jurisdiction over a dispute arising from a motor vehicle collision which occurred between two Indian drivers on a state highway within the confines of an Indian reservation. The only material factual distinction between the case at bar and *Gourneau* is that, in the instant case, the Indian defendant consented to the jurisdiction of the state courts. The first question certified to us is whether such individual acceptance of civil jurisdiction by an Indian, pursuant to § 27–19–05, N.D.C.C., effectively confers jurisdiction upon our state courts. We hold that it does not.

■ With the passage, in 1968, of Public Law 90–284, § 402 (25 U.S.C. § 1322) and § 406 (25 U.S.C. § 1326), the United States Congress clearly established the method by which States could assume civil jurisdiction over actions involving Indian parties and occurring within Indian country. Jurisdiction is to be obtained by a State only if, in a separate election, a Tribe votes to consent to the State's assertion of jurisdiction. *Kennerly v. District Court of Montana*, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971). Thus, a State may no longer unilaterally assert its jurisdiction. *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973); nor may a tribal council, acting for the Tribe, cede jurisdiction to a State. *Kennerly, supra*.

In *Eltobgi, supra* 221 N.W.2d at 647, we suggested that the federal statutes and case law may have rendered our individual consent statute invalid:

"We accept as facts that the mother and child reside on the reservation, although temporarily absent, and that they have not accepted jurisdiction over themselves by the State. In fact, they could not individually accept general jurisdiction under current law. The passage of Public Law 90–284, Section 406 (25 U.S.C. § 1326), probably makes our statute, Section 27–19–05, N.D.C.C., ineffective for the purpose of allowing individual general acceptance of jurisdiction."

■ We now conclude that state jurisdiction over Indian country may be obtained only by state and tribal compliance with Public Law 90–284, §§ 402 and 406. An individual defendant is no more able to confer jurisdiction upon the state than is a tribal council or a State, acting unilaterally. Section 27–19–05, N.D.C.C., enacted pursuant to Public Law 83–280, § 7 (1953), 67 Stat. 588, must now yield to the new federal doctrine. Our answer to the first certified question being no, consideration of the second certified question is obviated.

The last question certified to us is whether the district court has "residuary" jurisdiction over the present action. This question is asked because of the language contained in a recent Eighth Circuit Court opinion, *Poitra v. Demarrias,* 502 F.2d 23 (8th Cir. 1974), wherein, at page 29, n. 10, the Eighth Circuit Court of Appeals stated:

"10. Inasmuch as the Standing Rock Sioux Tribe has indicated in its tribal code that a state license and registration are necessary prerequisites for driving on the reservation, The Code of Justice of the Standing Rock Sioux Tribe §§ 8.1, 8.3 (July 1973), a persuasive argument can be made that the tribe has waived any 'interference' claims with regard to suits in which the Unsatisfied Judgment Fund is involved. This is supported by the fact that each driver in North Dakota contrib-utes, through his or her annual car registration fee, one dollar to the fund. North Dakota Century Code § 39–17–01 (1972). Furthermore, by acquiescing to the state regulations in this manner, the tribe may have left such fund cases to the 'residuary' jurisdiction of the state. *See State ex rel. Iron Bear v. District Court,* 512 P.2d 1292, 1298 (Mont.1973)."

The concept of "residuary" jurisdiction is a novel one, originating, to the best of our knowledge, with the Montana case of *State ex rel. Iron Bear v. District Court,* 512 P.2d 1292 (Mont.1973), the case cited in *Poitra.* In *Iron Bear,* the Montana Supreme Court held that the state courts of Montana had jurisdiction over divorce actions brought by residents of Indian reservations, even though jurisdiction had not been obtained pursuant to Public Law 90–284 (1968). The Montana Supreme Court utilized the test advanced in *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), to determine the question of state court jurisdiction. *Williams, supra* 358 U.S. at 220, 79 S.Ct. at 271, held that:

" . . . absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them."

The Montana Court concluded that no Acts of Congress governed divorce among residents of Montana's Indian reservations and, further, that assumption of jurisdiction by the state over divorce proceedings would not interfere with the rights to self-government of the reservation Indians.

■ There may be a basis for distinguishing *Iron Bear* in that the Assiniboine-Sioux Tribes of the Fort Peck Reservation in Montana ceded, in 1938, jurisdiction over marriages and divorces of its members to the state courts of Montana. It is not argued in this case that the Sioux Tribe of the Fort Totten Reservation has made a similar cession of jurisdiction. We will not infer a cession of jurisdiction on the part of

the Fort Totten Reservation from its incorporation of state law into its tribal code.

More importantly, we view Public Law 90–284 as a "governing Act of Congress" as that phrase is used in *Williams*. The problem of jurisdiction over Indian country has long plagued federal, state, and tribal governments. Alternating policies of termination and self-determination of Indian tribes have been espoused and employed by the federal government. Various theories have been used by the courts to support tribal or state authority. Since the enactment of Public Law 90–284, the emphasis has been placed more upon applicable federal statutes and less upon the traditional notions of tribal sovereignty or inherent state powers.

Perhaps the one case that best exemplifies the current reliance upon federal statutes as a basis for jurisdiction in Indian country is *McClanahan v. Arizona State Tax Commission,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). In *McClanahan,* the United States Supreme Court rejected a claim by the State of Arizona that the income of Indians derived from reservation sources could be taxed by the State. The essence of the Supreme Court's determination was that Arizona had no jurisdiction to impose such a tax because the area had been preempted by federal treaty and statute. The Supreme Court's discussion of jurisdiction illustrates the dependence that Court placed upon Congress as the final arbiter of competing state and tribal interests. In *McClanahan, supra* 411 U.S. at 172, 93 S.Ct. at 1262, the United States Supreme Court stated:

"Finally, the trend has been away from the idea of inherent Indian sovereignty as a bar to state jurisdiction and toward reliance on federal pre-emption. [Citation and footnote omitted.] The modern cases thus tend to avoid reliance on platonic notions of Indian sovereignty and to look instead to the applicable treaties and statutes which define the limits of state power. [Citations and footnote omitted.]"

In a footnote to the above quotation, at page 172, n. 8, 93 S.Ct. at 1262, the Court said:

"The extent of federal pre-emption and residual Indian sovereignty in the total absence of federal treaty obligations or legislation is therefore now something of a moot question. [Citations omitted.] The question is generally of little more than theoretical importance, however, since in almost all cases federal treaties and statutes define the boundaries of federal and state jurisdiction."

And, finally, in rejecting the argument that one should look to the "interference" test of *Williams* rather than to applicable federal legislation to determine the scope of state jurisdiction, the Court added a last footnote, at page 180, n. 21, 93 S.Ct. at 1266:

"Indeed, the position was expressly rejected in *Williams,* itself, upon which appellee so heavily relies. *Williams* held that '*absent governing Acts of Congress,* the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them.' [Citation omitted.]" [Emphasis in original.]

■ Thus, it may be seen that the *Williams* test of "infringement" or "interference" has, for all practical purposes, been abandoned. Public Law 90–284 applies to the assumption of jurisdiction by any State over any Indian reservation and as to any subject matter. It is difficult to envision a clearer statement of federal preemption. Thus, we are unable to read beyond the opening phrase of the *Williams* test in an effort to find "residuary" state jurisdiction. Accordingly, we answer in the negative the last question certified to us.

We realize that our decision will, in all likelihood, leave the Nelsons, the plaintiffs in the case at bar, without a forum in which to redress their injuries. Federal courts will not accept jurisdiction unless the statutory bases for federal jurisdiction are

present. Compare *Schantz v. White Lightning,* 502 F.2d 67 (8th Cir. 1974) with *Poitra, supra.* The tribal court is limited in its jurisdiction to cases involving less than $300. The solution to this most serious problem lies not with the State. Congress may amend its statutes; Indian tribes of this State may begin to assert their own jurisdiction. This State cannot exercise jurisdiction it does not possess.

This case is remanded to the district court for disposition consistent with this opinion.

ERICKSTAD, C. J., and SAND, J., concur.

PEDERSON, Judge (concurring specially).

I concur in the majority opinion but would add the following reason.

North Dakota statutes impose an obligation on one who negligently injures another, to pay damages even beyond $300. The record does not show that the Indian Tribe residing on the Fort Totten Indian Reservation had such a law. To assume "residuary" state jurisdiction in this case would necessarily assume that there would be no "infringement" or "interference" for us to impose our law of negligence and damages upon the Indians.

Likewise, in the case of divorce, the Montana court had to assume no "infringement" or "interference" with the Indian law when it imposed a Montana law permitting divorce upon the Indians because there was no Indian law permitting divorce. *State ex rel. Iron Bear v. District Court,* 512 P.2d 1292 (Mont.1973).

Also, in levying an income tax, Arizona, it could be argued, did not infringe or interfere when that state assumed jurisdiction and levied such tax in the absence of an Indian law on income tax. Nonetheless, the United States Supreme Court, in *McClanahan v. State Tax Commission of Arizona,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), held that this was unlawful.

No such assumption is valid. When there is no Indian law permitting damage for injuries caused by negligence, no Indian law permitting divorce, and no Indian law levying an income tax, a proper assumption should be that Indian law prohibits actions for damages in negligence cases, prohibits divorce, and prohibits the levying of an income tax.

These are clear cases of infringement and interference and no residual jurisdiction is available.

VOGEL, Judge (dissenting).

This is a case where there is a wrong without a remedy unless we find one. We are told by our Constitution to find one if we can. Section 22, Constitution of North Dakota, provides, in part:

"All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay. . . ."

In cases similar to the present one we formerly gave relief under North Dakota law. *Vermillion v. Spotted Elk,* 85 N.W.2d 432 (N.D.1957). However, subsequent to the *Vermillion* decision, the Federal law was changed by passage of Public Law 90–284, now codified in 25 U.S.C. 1322(a). In a new case, in which the facts were again similar to the present one, *Gourneau v. Smith,* 207 N.W.2d 256 (N.D.1973), we reexamined the holding in *Vermillion* and concluded that the Federal Government, by the passage of Section 1322(a), had made it impossible for us to grant relief. We recognized then, as we do now, that the Federal authority is preeminent as to jurisdiction on Indian reservations. While 1322(a) made it possible for the Tribes to grant civil jurisdiction to the States, this has not been done in any reservation in North Dakota. We therefore have only such jurisdiction as Federal law permits.

When *Gourneau* was decided, the language of 1322(a) appeared to prohibit any

exercise of civil jurisdiction by the State on any reservation in North Dakota. Since that time, however, there have been several decisions recognizing a "residual jurisdiction" in the States if such jurisdiction does not interfere with tribal self-government, if the Federal Government has not preempted the field, and if the tribal court is not acting. *Poitra v. Demarrias,* 502 F.2d 23 (8th Cir. 1974); *State ex rel. Iron Bear v. District Court,* 512 P.2d 1292 (Mont.1973). So far as State jurisdiction is concerned, the *Poitra* case is very nearly identical with the one before us. It also involves an automobile accident on a North Dakota reservation, allegedly caused by an Indian defendant, with the plaintiff seeking recovery from the North Dakota Unsatisfied Judgment Fund.

As I read the *Poitra* decision, it practically invites us to assert a "residual jurisdiction" here. It says:

" . . . Here, one Indian seeks to avail herself of the federal court in an action against another Indian. This fact in itself would seem to negate any interference claim that could be made since no interfering outsiders are trying to foist jurisdiction on the Indians. In addition, the underlying cause of action here is based on a *state-created* wrongful death statute and judgment fund, not a dispute that involves considerations of policy regarding tribal lands or customs. . . ." 502 F.2d 23, at 29.

The Court of Appeals also said, as noted in the majority opinion:

" . . . a persuasive argument can be made that the tribe has waived any 'interference' claims with regard to suits in which the Unsatisfied Judgment Fund is involved. This is supported by the fact that each driver in North Dakota contributes, through his or her annual car registration fee, one dollar to the fund. North Dakota Century Code § 39–17–01 (1972). Furthermore, by acquiescing to the state regulations in this manner, the tribe may have left such fund cases to the 'residuary' jurisdiction of the state. See *State*

*ex rel. Iron Bear v. District Court,* 512 P.2d 1292, 1298 (Mont.1973)." 502 F.2d 23, n. 10, p. 29.

In the case before us, the lower court found that the Devils Lake Sioux Tribe of the Fort Totten Indian Reservation of North Dakota has adopted a code of laws which limits its court's jurisdiction in civil proceedings brought by a non-Indian to suits in which the amount or value in controversy, including interest, does not exceed $300. The same code also prohibits the driving of a motor vehicle upon the public highways without a valid driver's or chauffeur's license, and prohibits operating a motor vehicle on roadways within the reservation unless the vehicle is in safe condition and complies with the registration laws of the State. This is indicative of an intention on the part of the Tribe to acquiesce in certain limited State jurisdiction on the reservation.

It should also be noted that we stated in *Rolette County v. Eltobgi,* 221 N.W.2d 645, 648 (N.D.1974), that "Restrictions on the authority of State courts on Indian reservations are not total"; and quoted from *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), to the effect that the question in the absence of governing Acts of Congress was whether State action infringed on the right of reservation Indians to make their own laws and be ruled by them. We also cited *Kennerly v. District Court of Montana,* 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971).

It is an unfortunate fact, as noted in *Schantz v. White Lightning,* 502 F.2d 67 (8th Cir. 1974), by the same panel which decided *Poitra v. Demarrias, supra,* that "non-Indian litigants are left without a forum in which to pursue their claim." This is true because of inaction on the part of the Congress, which holds the key to open either the courts of the Federal Government or the State courts to litigants with valid claims who now have nowhere to take them. Pending action by the Congress to correct this flagrant injustice, we should accept the invitation of the Eighth Circuit

to exercise a "residual jurisdiction" in this case and others like it.

It must be emphasized that *Gourneau* was decided strictly on Federal grounds, not State grounds. We expressed our willingness to handle cases such as this, if permitted to do so. The Federal court has recognized that the basis for the Gourneau decision was Federal law, and that we were willing to give judgment in cases such as this one if Federal law permitted. See *Poitra*, 502 F.2d 23, at 27:

> "The reason that North Dakota lacks jurisdiction over this civil action is because of a special status given Indians under *federal* law, not because of any *state* policy consideration." [Emphasis in original.]

And in *Schantz v. White Lightning*, 502 F.2d 67, 70, note 4:

> "We emphasize that North Dakota has in no way acted to bar Indians from its courts or to exclude them from the benefits of the Unsatisfied Judgment Fund."

Now that the Federal courts have removed the Federal bar to the exercise of a jurisdiction we were always willing to exercise, we should reopen our courts to this kind of case. I would answer both certified questions affirmatively.