David LOHNES, Jr., by his Guardian ad
Litem, Ruth Ann Lohnes, Plaintiff
and Appellant,

v.

Aloysius CLOUD, Defendant
and Appellee.

Civ. No. 9256.

Supreme Court of North Dakota.

June 2, 1977.

As Corrected July 11 and 12, 1977.

Foughty, Christianson & Thompson, Devils Lake, for plaintiff and appellant; argued by Neil Thompson, Devils Lake.

Thomas W. Robb, Asst. Atty. Gen., Bismarck, for defendant and appellee.

SAND, Justice.

This appeal was taken from an order of the Ramsey County district court, second judicial district, dismissing the plaintiff's petition for payment from the Unsatisfied Judgment Fund on a tribal court judgment.

On 23 October 1971, while walking along a highway on the Fort Totten Indian Reservation, plaintiff David Lohnes was struck by a car driven by Aloysius Cloud. Both Lohnes and Cloud were enrolled members of the Fort Totten Reservation. Lohnes, a minor, was injured in that accident and brought an action by his guardian ad litem, Ruth Ann Lohnes, against Cloud.

The action was commenced in state district court but was dismissed for lack of jurisdiction; subsequently it was filed in United States District Court, where another dismissal resulted. Lohnes then brought the matter before the Fort Totten tribal court which entered a judgment for Lohnes in the amount of $10,000.

After execution was issued and returned unsatisfied, Lohnes first obtained an order from the tribal court for payment from the Unsatisfied Judgment Fund. Payment was refused.

Lohnes then filed the tribal court judgment with the clerk of court of Benson County district court and applied to the district court for an order directing payment from the Unsatisfied Judgment Fund. The application was dismissed and this appeal resulted.

The main issue is whether or not the tribal court judgment qualifies to be assigned to the State for payment from the Unsatisfied Judgment Fund.

The pertinent provision relating to the Unsatisfied Judgment Fund in this appeal is § 39–17–03, North Dakota Century Code, which reads, in part:

"Where any person who is a resident of this state, recovers *in any court in this state* a judgment for an amount exceeding three hundred dollars in an action for damages *resulting from bodily injury to*, or the death of, any person occasioned by, or arising out of, the ownership, maintenance, operation or use of a motor vehicle by a judgment debtor in this state, upon such judgment becoming final, such judgment creditor may, in accordance with the provisions of this chapter, apply to the judge of *the district court in which such judgment was rendered*, upon notice to the attorney general, for an order directing payment of the judgment out of ·said fund. . . ." [Emphasis ours.]

The principal argument made by Lohnes is that the statute authorizes payment of his judgment from the Unsatisfied Judgment Fund. He admits that the statute is ambiguous but contends that it can be, and should be, interpreted to include a tribal court judgment, based upon the language referring to any person who recovers "in any court in this state." He places some importance on the fact that the statute uses the words "any court in this state" as distinguished from "of this state." The former, he proposes, potentially encompasses any court physically located in the state of North Dakota.

The phrase relied upon by Lohnes is followed later in the same statute by a reference to "the district court in which such judgment was rendered." The judgment here, although filed with the clerk of court for Benson County, was not rendered by the district court, but, rather, by the tribal court. Whether or not it was nevertheless intended for participation in the Unsatisfied Judgment Fund is a question that must be answered by interpreting the statute.

It should be noted that we have not addressed this precise question in prior opinions. *Schantz v. White Lightning*, 231 N.W.2d 812 (N.D.1975); *Gourneau v. Smith*, 207 N.W.2d 256 (N.D.1973); and *Nelson v. Dubois*, 232 N.W.2d 54 (N.D.1975), involved claims on the Unsatisfied Judgment Fund where one or more parties were Indians, but in none of those cases had a judgment been obtained from tribal court. The first two were brought in state district court, so that the primary question on appeal was the existence of state jurisdiction. In the third, that question was certified to this court and we held that there was no state jurisdiction.

Standing alone, the phrase "any court in this state" is subject to various interpretations ranging from narrow to broad. It must, however, be construed in light of the entire section in which it appears rather than in isolation. The subsequent reference to judgment of district court illuminates and clarifies the earlier language by limiting it to any district court which issued the judgment in the State. Lohnes suggested that the two phrases are inconsistent and that it would thus be proper to give a broad interpretation to the earlier phrase "any court in this state." The rules of construction, however, lead us to a different result. The rule stated in § 1–02–07, NDCC, is that if the general provision conflicts with the special provision in the same statute, the two shall be construed, if possible, so that effect is given to both. Were we to adopt the analysis suggested by Lohnes, that is, interpreting the earlier phrase to include any court located in the state, the latter provision on district courts would be left inoperative.

In addition, § 1–02–07 states that if two provisions, one general and one specific, are irreconcilable, the special provision shall prevail. The provision referring to district courts is the more specific of the two because it particularly identifies a category of courts within the state. This view is further sustained by the rule that where several irreconcilable clauses appear in the same statute, the clause last in order of position

shall prevail. See § 1–02–08, NDCC. In addition to these rules of construction, we are aided by the jurisprudential maxim that "particular expressions qualify those which are general." Section 31–11–05(25), NDCC.

We do not, however, think the language is inconsistent. The latter clause referring to district court does not invalidate the earlier language but simply defines and limits it. By reading the two phrases together in this manner neither one is rendered invalid. Thus the two clauses can be harmoniously construed.

Notwithstanding the "district court" language, Lohnes urges us to include the tribal judgment within the Unsatisfied Judgment Fund provisions by virtue of either the full faith and credit clause of Article IV, § 1, of the United States Constitution or under the principle of comity.

▮ The full faith and credit clause is applicable by its express terms only between States. Indian tribes are not States, but rather hold a unique legal status as "quasi-sovereign entities" over whom Congress has plenary power. See, *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); and *United States v. Kagama*, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886). They are dependent political nations and wards of the United States with only those characteristics of sovereignty not assumed by Congress. *Groundhog v. Keeler*, 442 F.2d 674 (10th Cir. 1971).

Even in *Begay v. Miller*, 70 Ariz. 380, 222 P.2d 624 (1950), where a county court was held bound to recognize a tribal divorce decree, the court was careful to point out that recognition was not made under the full faith and credit clause, which applies only between States. Its recognition was based only upon the general rule that a divorce valid where granted is recognized as valid everywhere. That principle, of course, does not apply here.

Lohnes cites *Jim v. C. I. T. Financial Services Corp.*, 87 N.M. 362, 533 P.2d 751 (1975), as a case where full faith and credit was given to the laws of an Indian tribe. In that case, however, the action was brought in state district court under the tribal code. The court held that pursuant to 28 U.S.C. § 1738 the tribal laws were entitled to full faith and credit in state courts and that the complaint had been dismissed erroneously because the real issue was one of choice of law.

▮ We recognize that under 28 U.S.C. § 1738 a judgment rendered in a territory is entitled to full faith and credit. However, no greater credit need be given to the judgment than it was accorded in the forum where it was rendered. *Holm v. Shilensky*, 388 F.2d 54 (C.A.N.Y. 2 Cir. 1968). Here, the judgment was not qualified for participation in the Unsatisfied Judgment Fund in the forum where it was rendered, and its treatment should be no different in state court. Recognition of this federal statute, however, does not end the matter, for in reality this is not a full faith and credit issue. We do not question the validity of that judgment, we are simply required to determine whether it comes within the provisions of the Unsatisfied Judgment Fund statute. Not all valid judgments are entitled to benefit from the Fund. For example, those rendered in sister States may not share in the Fund.

▮ The doctrine of comity raises the same problems. The question is not whether we will recognize the tribal court judgment, but whether it meets the statutory requirements. The principle of comity is most often used in relation to two independent sovereign Nations or States. See *Begay, supra*. It is not a rule of law, nor does it exist as a matter of right, but is only a rule of practice and convenience and is fully in the discretion of the court. See Black's Law Dictionary 334 (4th Ed. 1968); and *Nowell v. Nowell*, 408 S.W.2d 550 (Tex.Civ. App.1966).

Comity was defined generally in *Dow v. Lillie*, 26 N.D. 512, 144 N.W. 1082 (1914), as a willingness to grant a privilege not as a matter of right but out of deference and good will. The word was referred to more particularly in *State v. Meier*, 127 N.W.2d 665 (N.D.1964), as the doctrine under which the court that first acquires jurisdiction of

a question retains it. It should be apparent that a rule of practice which is purely discretionary would do little to resolve the underlying problem, and may in fact increase it by enhancing the possibility of lack of uniformity in future decisions.

In the end, we must determine only whether § 39–17–03, NDCC, was anticipated to include judgments other than those rendered in district court. We hold that the language of the statute itself precludes a judgment rendered in tribal court from entitlement to Fund benefits. It simply does not meet the requirements set forth. The conclusion that a judgment be of a district court to qualify is reinforced by language appearing further on in § 39–17–03 which requires the judgment creditor to show "that he has obtained judgment *as set out in this section* . . ." [Emphasis added.]

 Our exclusion of Lohnes from participation in the Fund does not, as he suggests, deny him equal protection of the laws. That question has been clearly settled by both the United States Supreme Court and by this Court. In *United States v. Antelope,* —— U.S. ——, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977), where it was argued that defendants' felony murder convictions were racially discriminatory and violative of equal protection, the Court held that impermissible racial classifications were not employed and that the defendants were subjected to federal criminal jurisdiction not because they were of the Indian race but because they were enrolled members of the Coeur d'Alene tribe. The Court quoted from *Morton v. Mancari, supra,* and stated that such preferences or disabilities were rooted in the unique status of Indians as a separate people with their own political institutions. In *Fisher v. District Court,* 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976), where tribal members were denied access to Montana state courts for an adoption proceeding, the court said:

" . . . we reject the argument that denying respondents access to the Montana courts constitutes impermissible racial discrimination. The exclusive jurisdiction of the tribal court does not derive from the race of the plaintiff but rather from the quasi-sovereign status of the Northern Cheyenne Tribe under federal law. Moreover, even if a jurisdictional holding occasionally results in denying an Indian plaintiff a forum to which a non-Indian has access, such disparate treatment of the Indian is justified because it is intended to benefit the class of which he is a member by furthering the congressional policy of Indian self-government."

Lynaugh, the author of *Developing Theories of State Jurisdiction Over Indians: The Dominance of the Preemption Analysis,* 38 Mont.L.Rev. 63 (1977), proposed that the *Fisher* case finally put to rest the argument that the denial of state jurisdiction is discrimination based on race.

In *Gourneau v. Smith,* 207 N.W.2d 256 (N.D.1973), where a similar argument was made on due process grounds, we held that the plaintiff (an enrolled member of the Turtle Mountain Indian Reservation) was not denied access to state courts because she was an Indian but because the action involved an alleged tort committed by an Indian on an Indian Reservation where the tribe had not consented to accept state jurisdiction in the manner provided by federal law.

Although many of the aforementioned cases were jurisdictional, the equal protection analysis is applicable insofar as it relates to any preference or disability affecting Indians. Here, where the issue is not denial of access to state court, but ability to share in a state Fund, the resolution is the same: the plaintiff is not denied a share of the Fund because of race but because the judgment does not meet the requirements of the Unsatisfied Judgment Fund. The fact that the judgment was by his tribal court is merely incidental. It was not a state "district court" as required by § 39–17–03, NDCC.

We recognized in *Nelson v. Dubois,* 232 N.W.2d 54 (N.D.1975), that our decision left the plaintiffs without a forum in which to redress their injuries but stated that the

solution was with Congress and the Indian tribes, not with the State. Our decision here to deny availability of unsatisfied judgment funds to the plaintiff is not a jurisdictional question except insofar as it does make a difference under the statute where the judgment was rendered, and a court which does not have jurisdiction obviously cannot hand down a judgment. Public Law 280, 83rd Congress, and subsequent amendments, effectively denied jurisdiction to the State over Indians on an Indian Reservation unless consent is given pursuant to the congressional Act. Had the judgment here been obtained in state district court the Fund would have been, of course, available to the plaintiff, but his inability to litigate in that forum is a limitation we are not empowered to correct. In the Lynaugh article, supra at 94, the author commented:

> ". . . Lack of remedy . . . is not unique to Indian law; often people are left without a remedy because of procedural limitations based on public policy (such as the Statute of Frauds and Statutes of Limitations). Ultimately, the creation of remedies in Indian law, however, is for the tribes and Congress, not for the courts."

The underlying policy of these decisions is that of Indian self-determination and self-government. Conceivably, a different result in this case could hinder that policy by subjecting a tribe to additional interference; for example, allowing the Attorney General to appear in tribal court to defend an action on behalf of a defendant who would otherwise be in default under § 39–17–04, NDCC. There would also be the problem of whether a non-Indian litigant who is for some reason denied access to a certain forum or remedy could pursue that remedy in tribal court under the general principles argued by the plaintiff here.

Furthermore, the assignment of such judgment to the State without the concomitant power to execute it would constitute a useless or empty gesture under present law and circumstances.

We therefore hold that the tribal court judgment does not come within the scope of § 39–17–03, NDCC, as a judgment entitled to benefits under the Unsatisfied Judgment Fund. The district court's dismissal of the application is affirmed.

ERICKSTAD, C. J., and PAULSON and PEDERSON, JJ., concur.

VOGEL, Justice (dissenting).

I dissent. As I see it, there is no question of jurisdiction whatever in this case. There is only a question of interpretation of one part of § 39–17–03, North Dakota Century Code, and whether that section should be interpreted so as to deprive residents of North Dakota of the protections of the Unsatisfied Judgment Fund to which they have contributed, merely because a judgment was obtained in one court rather than another.

## JURISDICTION NOT INVOLVED

I believe the majority opinion insufficiently recognizes, or fails to recognize, that § 39–17–03, NDCC, requires some court or other to perform two entirely different functions. One of those functions is the traditional function which courts exercise in hearing and deciding cases, while the other is the semi-administrative function of deciding when post-judgment proceedings are sufficient to justify payment from the Unsatisfied Judgment Fund.

When Indians are involved as defendants in actions for damages arising from automobile accidents and the accidents occur on Indian reservations, serious questions of jurisdiction of state and federal courts arise. In a whole series of cases including *Gourneau v. Smith*, 207 N.W.2d 256 (N.D. 1973); *Schantz v. White Lightning*, 231 N.W.2d 812 (N.D.1975); and *Nelson v. Dubois*, 232 N.W.2d 54 (N.D.1975), we have held that the state courts have no jurisdiction over Indian defendants involved in automobile accidents on Indian reservations. All of these cases involved automobile accidents with potential claims against the Unsatisfied Judgment Fund, just as the case before us does.

But the important distinction between those cases and the one now before us is that the actions were brought in state court in the three cases just cited, and it was held that the state court had no jurisdiction, while in the case now before us that action was brought and the judgment obtained in tribal court, which had undoubted jurisdiction over the parties and over the subject matter. Thus, the question of jurisdiction in the obtaining of the judgment against the defendant is not before us in the present case, while the other cases were all decided adversely to the plaintiff on the sole ground of lack of jurisdiction of the court in which the action was brought.

We are therefore breaking new ground in the present case.

It is my view that once a judgment is obtained in a court of competent jurisdiction against an Indian defendant for negligence in an automobile accident on an Indian reservation, in this State, the plaintiff may thereupon go into state court to obtain an order for payment from the Unsatisfied Judgment Fund.

To illustrate the difference between the two functions performed by courts in Unsatisfied Judgment Fund cases, I will set out the statute in question, emphasizing that portion which relates to the semi-administrative function.

"39–17–03. Recovery from fund—Provisions governing.—Where any person, who is a resident of this state, recovers in any court in this state a judgment for an amount exceeding three hundred dollars in an action for damages resulting from bodily injury to, or the death of, any person occasioned by, or arising out of, the ownership, maintenance, operation or use of a motor vehicle by the judgment debtor in this state, upon such judgment becoming final, *such judgment creditor may, in accordance with the provisions of this chapter, apply to the judge of the district court in which such judgment was rendered, upon notice to the attorney general, for an order directing payment of the judgment out of said fund. Upon the hearing of the application, the judg-* *ment creditor shall show: (1) that he has obtained judgment as set out in this section, stating the amount thereof and the amount owing thereon at the time of the application; (2) that he has caused an execution to be issued thereon, and that (a) the sheriff has made a return thereon showing that no property of the judgment debtor liable to be seized in satisfaction of the judgment debt, could be found, or (b) the amount realized on the sale of property seized, or otherwise realized under the execution, was insufficient to satisfy the judgment, stating the amount so realized and the balance remaining due thereon; (3) that he has caused the judgment debtor, where the judgment debtor is available, to be examined pursuant to law for that purpose, touching his property, and in particular as to whether the judgment debtor is insured under a policy of automobile insurance against loss occasioned by his legal liability for bodily injury to, or the death of, another person; (4) that he has made an exhaustive search and inquiry to ascertain whether the judgment debtor is possessed of property, real or personal, liable to be sold or applied in satisfaction of the judgment; and (5) that as a result of such search, inquiry and examination, he has learned of no property, real or personal, possessed by the judgment debtor and liable to be sold or applied in satisfaction of the judgment debt, or that he has learned of certain property, describing it, owned by the judgment debtor and liable to be seized or applied in satisfaction of the judgment, and has taken all necessary proceedings for the realization thereof, and that the amount thereby realized was insufficient to satisfy the judgment, stating the amount so realized and the amount remaining due thereon."*

As I have said, the tribal court had jurisdiction over the defendant beyond all question. It entered a valid judgment against the defendant. All that remained to be done, in order to collect from the Unsatisfied Judgment Fund, is to obtain an order

from a district court for payment from the Fund. Jurisdiction over Indians on Indian reservations is no longer involved. The only dispute now remaining is between the Indian plaintiff, a resident of this State and entitled to be a beneficiary of the Unsatisfied Judgment Fund, to which he must contribute in order to have a driver's license, and the State itself, acting through the Unsatisfied Judgment Fund. In such a dispute the State has no reason to claim any lack of jurisdiction over the Indian defendant.

What we have before us, then, is simply a dispute between a resident of this State, who happens to be an Indian, and the State itself, acting through the Unsatisfied Judgment Fund. The only issue before us is the interpretation of § 39–17–03, NDCC, and particularly the language relating to "judge of the district court in which such judgment was rendered," contained in the portion of the statute relating to the obtaining of an order for payment from the Unsatisfied Judgment Fund, which I have described above as the semi-administrative portion of the statute.

## INTERPRETATION OF THE STATUTE

In the interpretation of the statute, I suggest that there is little difficulty. In the first place, as I have suggested, the two provisions refer to two different functions of courts: one judicial, the other semi-administrative. The judicial function can, according to the law, be performed by any court "in this state." The second one, referring to the district court "in which such judgment was rendered," contains surplusage and should be construed so as to make sense of the statute. That sense could be furthered by either ignoring the word "district," allowing the court which issued the judgment to make the order for payment, or by eliminating the words "in which such judgment was rendered," which would permit the district court to perform the semi-administrative function of ordering payment after a judgment was obtained in any other court in this state—whether federal, tribal, county court of increased jurisdiction, or county justice court. I would prefer the latter.

The least desirable interpretation is the one used by the majority which in effect strikes out the words "in this state" and forces all automobile negligence cases which might result in claims on the Fund to be commenced in state district court, thereby depriving persons so unfortunate as to be injured by Indian drivers on Indian reservations of any protection from the Unsatisfied Judgment Fund to which they contribute like anyone else.

I disagree with the majority when it says that this raises no constitutional questions. All North Dakota drivers are compelled to obtain driver's licenses before driving. This includes Indians. Not only does state law require it, but tribal ordinances require Indians driving on reservation roads to have such licenses. See *Poitra v. Demarrias*, 502 F.2d 23 (8th Cir. 1974), quoted in dissent in *Nelson v. Dubois, supra*, at page 60. In order to obtain such licenses, all drivers, including Indians, must pay a $1.00 fee to the Unsatisfied Judgment Fund whenever assessment is made. By its terms, the law as to the Unsatisfied Judgment Fund applies to the entire state. But the majority holds that the Fund cannot be resorted to by injured persons, white or Indian, if the injury occurs on a reservation by the negligence of an Indian driver, even though all parties have contributed to the Fund. The majority opinion restricts the benefits of the Fund to only those persons who are able to sue in the state district court, and allows no recovery to those who sue in other courts of coordinate powers which have complete jurisdiction of the parties and the subject matter of the action. To me, this is unequal treatment, it is not equal protection of the laws, and it is not due process. The discrimination is not against Indians, as such, but against all persons (Indian or non-Indian) injured by the negligence of Indian drivers on Reservations within the State.

The pertinent statute, § 39–17–03, NDCC, contains inconsistent provisions. In one place it refers to recovery of judgment "in any court of this state," a provision

which surely includes tribal courts. In another it refers to the "district court in which such judgment was rendered," a description which excludes tribal courts (as well as county courts of increased jurisdiction, county justice courts, and federal courts).

I cannot agree that either provision is more general, special, or particular than the other. One of them comes later in the statute, as the majority says, but the canon of construction is to be used only as a last resort (see § 1–02–08, NDCC), and I would prefer the much more important canon that statutes should be so interpreted that constitutional questions should be avoided. *State v. Hagge*, 211 N.W.2d 395 (N.D.1973); *State v. Erickson*, 72 N.D. 417, 7 N.W.2d 865 (1943). The majority opinion says that no question of constitutionality arises as to Indians, but my point is that the question arises because the Unsatisfied Judgment Fund is being interpreted so as to discriminate against some injured persons, contrary to the general purpose of the statute.

## EFFECT OF TRIBAL COURT JUDGMENTS

Tribal courts are courts as regular as any other. They are set up pursuant to federal law, and often supported by federal funds. They are considered for some purposes, at least, as federal courts. See *United States v. Wheeler*, 545 F.2d 1255 (9th Cir. 1976), holding that a conviction of contributing to the delinquency of a minor in tribal court barred, under the double jeopardy provisions of the United States Constitution, a subsequent federal prosecution for rape, since tribal courts and federal courts are "not arms of separate sovereigns." And see, *Colliflower v. Garland*, 342 F.2d 369 (9th Cir. 1965), in which it is stated that " . . . it is pure fiction to say that the Indian courts functioning in the Fort Belknap Indian community are not in part, at least, arms of the federal government."

I suggest that we are as bound to give full faith and credit to judgments of tribal courts within their jurisdiction as we are to federal courts within theirs.

## CONCLUSION

It boils down to this: We have often said that state law allows Indians to recover from the Unsatisfied Judgment Fund, but federal law forbade us from hearing the cases (see *Nelson v. Dubois, supra*). Now we have an Indian asking us in our courts to enforce a valid judgment of an Indian court so as to permit a recovery from the Fund; no Indian is objecting, but only the Fund itself. The State should keep its promises, especially since the tribal court which granted the judgment is in some senses a federal court, and since it is entitled to as much full faith and credit as a federal court, and since Indians contribute to the Fund just as non-Indians do.

Grave constitutional questions will be avoided if we take the alternative reading of the relevant statute which will avoid the constitutional questions. I would do so, and grant recovery from the Fund.

I must add that I adhere to the views expressed in my dissent in *Nelson v. Dubois, supra*, in which I pointed out that there is respectable authority for the proposition that the courts have a residual jurisdiction over some matters relating to Indians, and that this is particularly true in Unsatisfied Judgment Fund matters. But, as I stated above, I find no question of jurisdiction in the present case.