Doris M. MALATERRE, Plaintiff and Appellee,

v.

Frederick F. MALATERRE, Defendant and Appellant.

Civ. No. 9716.

Supreme Court of North Dakota.

May 15, 1980.

Traynor & Rutten, Devils Lake, for plaintiff and appellee; no appearance.

Kuchera & Stenehjem, Grand Forks, for defendant and appellant; argued by Thomas John Kuchera, Grand Forks.

SAND, Justice.

Frederick F. Malaterre [Frederick] appealed from an order of the Rolette County district court which dismissed his motion to modify the child custody provision of a divorce judgment entered on 24 Sept 1976 because the district court lacked jurisdiction over the matter. We affirm.

Early in 1976 Doris M. Demery [Doris], then Doris M. Malaterre, initiated an action in the Rolette County district court for divorce from Frederick, her husband of near-

ly seven years, on the grounds of irreconcilable differences. On 23 Aug 1976 the parties entered into a "stipulation property settlement agreement" providing that each would receive specified particulars of their personal property, that Frederick would pay no alimony to Doris, that Doris would have custody and control of their only child, Angela Mae, subject to specified visitation rights granted to Frederick, and that Frederick would pay $50 per month as child support. The agreement further stated it constituted "full, final, and complete division, settlement, and distribution of the properties of the parties hereto and shall constitute a full and complete compromise and settlement of all of the property rights of the parties hereto and of all claims and demands of every kind, nature, and description." At the time the stipulation was entered into, Frederick resided in Grand Forks, North Dakota, and Doris was living at "103 North Terrace, Fargo, North Dakota." Both Frederick and Doris were enrolled members of the Turtle Mountain Band of Chippewa at all times relevant to this appeal, as was their child, Angela Mae.

On 24 Sept 1976 a judgment granting Doris an absolute decree of divorce from Frederick was entered in the Rolette County district court. The order adopted in full the parties' "stipulation property settlement agreement" which the court stated was just and equitable.

Since the time of the divorce, Doris has changed her residence on numerous occasions and has lived for varying periods of time on or within the exterior boundaries of the Turtle Mountain Indian Reservation which is located within Rolette County, North Dakota. The record disclosed that Doris remained in Fargo until approximately September of 1978. At that time she relocated to Belcourt, North Dakota, which is within the exterior boundaries of the Turtle Mountain Reservation, where she stayed roughly six months. From Belcourt, Doris moved to Phoenix, Arizona, for five months but returned to Belcourt in the summer of 1979 and has resided there since that time. Angela Mae was in the custody and control of her mother throughout the periods of time chronologized above. Frederick remained a resident of Grand Forks throughout the period.

On 24 Aug 1979, Frederick moved the Rolette County district court to modify its 24 Sept 1976 judgment and award him custody of Angela Mae because there had been substantial and significant changes in the circumstances of the parties which seriously affected the best interests and welfare of the child. On 27 Sept 1979 Doris moved the district court to dismiss Frederick's motion for the reason that the state district court lacked jurisdiction over the persons of Doris and Angela Mae because they were living within the exterior boundaries of the Turtle Mountain Indian Reservation. In an affidavit in support of the motion for dismissal, Doris' attorney also asserted that Doris understood that there would be no further change in the child custody arrangement because the "stipulation property settlement agreement" specifically constituted a full and complete compromise and settlement of all the parties' property rights and of all claims and demands of every kind, nature, and description.

A hearing was held in Rolette County district court on Doris' motion for dismissal on 4 Oct 1979. The district court, after hearing the evidence presented by the parties, stated as follows:

". . . Now, I expressly reject the concept that parties, by agreement, may oust a district court of this state of jurisdiction; it has continuing jurisdiction over child custody, but under the circumstances here, the plaintiff [Doris] being an enrolled Indian, residing on the Reservation, as is the child, by the statutes of the federal government, this court is preempted from exercising jurisdiction. Accordingly the motion to dismiss is granted and the counsel for the plaintiff may submit an appropriate order in conformity herewith."

The order granting Doris' motion for dismissal was entered on 9 Oct 1979 and Frederick appealed the dismissal to this court.

The general rule in North Dakota is that a court having jurisdiction to hear a divorce action continues to have jurisdiction regarding the custody, care, and education of the children of the marriage as may be deemed necessary or proper and to vacate or modify any decree as is deemed appropriate in the best interests of the children. *Goff v. Goff*, 211 N.W.2d 850 (N.D.1973); *Eisenbarth v. Eisenbarth*, 91 N.W.2d 186 (N.D.1958). This is true regardless of any contract of the parties to the contrary. *Eisenbarth v. Eisenbarth, supra* ; *Sinkler v. Sinkler*, 49 N.D. 1144, 194 N.W. 817 (1923). Therefore, we agree with the district court that it was not ousted of its jurisdiction by the "stipulation property settlement agreement" entered into by Doris and Frederick.

However, the above general concept of North Dakota law does not apply to a situation in which the district court loses jurisdiction over one or more of the parties to the action. In the instant case we are assuming that the original divorce proceedings and decree were valid on the basis that the court had jurisdiction over the subject matter and the parties. No question was raised on appeal that the original proceedings or decree were invalid for any reason. Consequently, there is no need for us to review the original divorce proceeding. However, since then the situation and circumstances have changed. The mother and child have become residents and are presently residing within an Indian reservation in the state of North Dakota. Therefore, the sole issue before us on appeal is whether or not the district court was correct in dismissing Frederick's motion to modify the divorce judgment because the court no longer had jurisdiction over Doris and Angela Mae.

Section 203 of the North Dakota Constitution, as amended in 1958, and as pertinent to the issue here, states in part as follows:

". . . [All lands lying within this state owned or held by an Indian or Indian tribes] shall be and remain subject to the disposition of the United States, and . . . said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States, provided, however, that the Legislative Assembly of the state of North Dakota may, upon such terms and conditions as it shall adopt, provide for the acceptance of such jurisdiction as may be delegated to the state by act of Congress . . . ."

Pursuant to Public Law 83–280, § 7 (1953), the North Dakota Legislature enacted Ch. 242, 1963 S.L., which is now codified as Ch. 27–19, NDCC. Section 27–19–01, NDCC, provides as follows:

"In accordance with the provisions of Public Law 280 of the 83rd Congress and section 203 of the North Dakota constitution, jurisdiction of the state of North Dakota shall be extended over all civil causes of action which arise on an Indian reservation upon acceptance by Indian citizens in a manner provided by this chapter. Upon acceptance the jurisdiction of the state shall be to the same extent that the state has jurisdiction over other civil causes of action, and those civil laws of this state that are of general application to private property shall have the same force and effect within such Indian reservation or Indian country as they have elsewhere within this state."

Section 27–19–08, NDCC, in part and as pertinent to the issue here, provides as follows:

". . . The civil jurisdiction herein accepted and assumed shall include but shall not be limited to the determination of parentage of children, termination of parental rights, commitments by county mental health boards or county judges, guardianship, marriage contracts, and obligations for the support of spouse, children, or other dependents."

Although there is no specific mention in § 27–19–08 of child custody matters, we believe that they are impliedly included in the provision relating to the "obligations for the support of spouse, children, or other dependents." Therefore, we infer that the Legislature has in effect stated that North Dakota will not have jurisdiction over the above matters, including child custody, of

Indians physically residing on Indian reservations unless the Indians adopted or ceded jurisdiction to the state pursuant to federal and state law.

■ In 1968, the United States Congress enacted Public Law 90–284, § 402 (25 U.S.C. § 1322), § 406 (25 U.S.C. § 1326), which changed the method by which states could assume civil jurisdiction over actions involving Indian parties and occurring within Indian country. Under this law, jurisdiction was obtained by a state only if the tribe, in a separate election, voted to consent to the state's assertion of jurisdiction. *Kennerly v. District Court of Montana*, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971). The state may no longer unilaterally assert its jurisdiction, and neither may the tribal council acting alone cede jurisdiction to the state on behalf of the tribe. *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973); *Kennerly, supra.*

■ While some of the provisions of Ch. 27–19, NDCC such as § 27–19–05 and possibly § 27–19–06 are no longer effective because of Public Law 90–284 [see *Nelson v. Dubois*, 232 N.W.2d 54 (N.D.1975)], the basic concept remains the same. That concept is that only the Indians, collectively rather than as individuals, may cede jurisdiction to the state, and without such collective action the state has no jurisdiction over Indians residing within the exterior boundaries of an Indian reservation. No action has been taken in North Dakota in compliance with Public Law 90–284 and consequently North Dakota does not have jurisdiction over Indians residing within the exterior boundaries of an Indian reservation.

We observed in *Nelson v. Dubois, supra,* that some states have adopted the concept of "residuary jurisdiction" whereby state courts accept jurisdiction over actions brought by residents of Indian reservations even in the absence of compliance with Public Law 90–280. See, *State ex rel. Iron Bear v. District Court*, 512 P.2d 1292 (Mont. 1973). The touchstone used in "residuary jurisdiction" cases is whether or not the standards of *Williams v. Lee*,[1] 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), have been violated by the state exercising jurisdiction. These standards have full application here. In *Williams*, the United States Supreme Court stated as follows:

" . . . absent governing acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them."

■ As we stated in *Nelson*, Public Law 90–280 is a "governing act of Congress" as that phrase is used in *Williams*. Therefore, because Congress has expressly acted on the matter of state assumption of jurisdiction over Indian country, only strict compliance with the federal guidelines can invoke state jurisdiction and "residuary jurisdiction" has no application. Further, even without Public Law 90–280, there are some provisions in Ch. 27–19, NDCC,[2] still in effect setting

1. In the *Williams* case a non-Indian operated the general store on an Indian reservation in Arizona under a license required by federal statute. He brought an action in the Arizona courts against an Indian, and his wife, who lived on the reservation, to collect for goods sold to them on credit. The state court entered a judgment in favor of the non-Indian. The Arizona Supreme Court affirmed. The United States Supreme Court reversed on the grounds that to allow the state to exercise jurisdiction would undermine the authority of the tribal courts over reservation affairs and would infringe on the right of the Indians to govern themselves. The court also said that if this power to govern themselves is to be taken away from them it is for Congress to do it, citing *Lone Wolf v. Hitchcock*, 187 U.S. 553, 564, 566, 23 S.Ct. 216, 220, 221, 47 L.Ed. 299, 305 37.

2. In *Nelson* we said:

"In *Eltobgi, supra*, 221 N.W.2d [645] at 647, we suggested that the federal statutes and case law may have rendered our individual consent statute invalid:

'We accept as facts that the mother and child reside on the reservation, although temporarily absent, and that they have not accepted jurisdiction over themselves by the State. In fact, they could not individually accept general jurisdiction under current law. The passage of Public Law 90–284, Section 406 (25 U.S.C. § 1326), probably makes our statute, Section 27-19-05, N.D.C.C., ineffective for the purpose of allowing individual general acceptance of jurisdiction.' "

forth the procedures to be followed for state assumption of jurisdiction over Indian civil matters. These procedures have not been followed. As discussed above, child custody determinations are within the scope of § 27–19–08, NDCC.

We also note that North Dakota has enacted the Uniform Child Custody Jurisdiction Act, Ch. 14–14, NDCC, which gives the court considerable latitude in determining child custody either as an initial decree or as a modification of a decree. Section 14–14–03, NDCC, spells out the conditions under which the court has jurisdiction to make a child custody determination either by the initial decree or modification. Basically these conditions are that the state must be the home state of the child, or that the child must have significant connection with the state, or that the child must be physically present in the state, or that no other state has jurisdiction.

The jurisdiction granted by this Uniform Child Custody Act is not, however, without limitation. Section 14–14–07, NDCC, provides that the court "which would have jurisdiction may decline its jurisdiction if it finds that it is an inconvenient forum to make the determination" and that the court of another state is a more appropriate forum. Nevertheless, we do not ground our finding of no jurisdiction in this case on § 14–14–07. That section pertains to fact situations which involve jurisdictional disputes with sister states, whereas in the instant case the child and mother are within the state but are residing on an Indian reservation which is considered a dependent sovereign or quasi sovereign and jurisdiction of the state is limited over an Indian residing within the exterior boundaries of an Indian reservation pursuant to Public Law 90–284. See, *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); and *United States v. Kagama*, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886).

▮ Assuming the state could assert jurisdiction under § 14–04–03, NDCC, and further assuming that the court were to modify the decree and give custody of the child to Frederick, we still have the further problem of enforcing that order or decree within the exterior boundaries of the Turtle Mountain Reservation. The tribal court would not be bound to enforce the modification order by reason of the full faith and credit clause, because that federal constitutional provision is expressly applicable only between states. As mentioned above, Indian reservations are not states, but rather hold a unique legal status as quasi sovereign entities over whom Congress has plenary power. They are dependent political nations and wards of the United States with those characteristics of sovereignty recognized or allowed by Congress. *Groundhog v. Keeler*, 442 F.2d 674 (10th Cir. 1971); *Lohnes v. Cloud*, 254 N.W.2d 430 (N.D. 1977).

One possible avenue for tribal court enforcement of a state court trial custody modification in this matter would be to request the tribal court to invoke some form of the principle of "comity" which is used for domestic enforcement of foreign judicial decrees. In *Medical Arts Building, Ltd. v. Eralp*, 290 N.W.2d 241 (N.D.1980), we had occasion to discuss the meaning and application of comity with reference to foreign judgments in this country. We quoted from the opinion of the United States Supreme Court in *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), wherein it said:

> " 'Comity,' in the legal sense, is neither a matter of absolute obligation on the one hand nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard to both international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws."

See also, *State v. Meier*, 127 N.W.2d 665 (N.D.1954); and *Dow v. Lillie*, 26 N.D. 512, 144 N.W. 1082 (1914).

■ However, before comity may be relied upon it is necessary to establish that the court which issued the order or judgment had jurisdiction over the matter and the parties involved and that due process was afforded to the parties in the proceedings.[3] If the court is without jurisdiction (at least while mother and child reside on the reservation) then one of the basic requisites, i. e., jurisdiction, would be missing and consequently comity would no longer apply. Furthermore, it appears that due process would be lacking under such situation.

The father, being an Indian, could resort to the tribal court for a resolution of his problem. Unfortunate as it may be, the resolution of the problem presented here, nevertheless, rests with the United States Congress to enact appropriate laws rather than with the courts to fashion an appropriate remedy.

The ultimate solution to the inevitable conflict between jurisdictional rights of state courts and Indian tribal courts lies not in the appellate tribunals of our state judiciaries, but instead in legislative actions undertaken by the United States Congress.

In *Williams v. Lee, supra,* the court said: "Significantly, when Congress has wished the State to exercise this power it has expressly granted them the jurisdiction which *Worcester v. Georgia* had denied."

■ Finally, we have also reviewed Public law 95–608 of the 95th Congress which was enacted, among other purposes, to establish standards to be used in "child custody proceedings" for the placement of Indian children in foster or adopted homes and to prevent the breakup of Indian families to determine if it has any special application here. That act, however, specifically states that the term "child custody proceeding" shall not include a placement based upon an award, in a divorce proceeding, of custody to one of the parents. From the definition of the term "child custody proceeding" as found in the act, it appears that Public law 95–608 does not apply to the award of custody of a child or children to one or the other parent as the result of a divorce proceeding. On this basis, we conclude that Public Law 95–608 does not apply to the instant case even though the act otherwise clearly illustrates that the United States Congress was concerned with keeping Indian families from breaking up.

For the foregoing reasons, we affirm the judgment of the district court.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.

---

**3.** In the instant case the court said it had no jurisdiction and consequently issued no order modifying the order relating to the custody of the child.