**In re the Marriage of Stuart DESJARLAIT, Petitioner, Appellant,**

v.

**Irene DESJARLAIT, Respondent.**

**No. CO–85–1331.**

Court of Appeals of Minnesota.

Dec. 17, 1985.

Harold R. Finn, Jr., Walker, for appellant.

Mark L. Rodgers, Bemidji, for respondent.

Considered and decided by PARKER, P.J., and FORSBERG and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Stuart Desjarlait appeals the custody award of the Beltrami County Court. We affirm.

## FACTS

Irene Desjarlait and Stuart Desjarlait are the parents of Corey and Kristie. All four are enrolled members of the Red Lake Band of Chippewa Indians. Corey was born in 1977, and Kristie was born in 1979. The trial court found that from the time Corey and Kristie were born up until Stuart and Irene were married in June 1981, Irene had sole and exclusive custody of the two children and was the sole caretaker. Prior to the marriage, Irene and the children resided in Redby, Minnesota. After the marriage, Irene, Stuart, and the children resided on the Red Lake Indian Reservation.

The Red Lake Tribal Court became involved with the parties as a result of several criminal convictions in the tribal court. The tribal court convicted Stuart for nonsupport, disobedience to the tribal court, and "child care." Irene was convicted for disorderly conduct, "child care," and disobedience to the trial court. As a result of these convictions, the tribal court issued three custody orders. On June 19, 1984, the tribal court awarded Stuart temporary custody for a period of ninety days, subject to the weekend visitation rights of Irene. On August 24, 1984, the tribal court revoked Irene's visitation rights because the tribal court became aware that she was not "fulfilling" her visitation privileges. Finally, on September 13, 1984, the tribal court awarded Stuart temporary custody, and granted Irene visitation rights on Wednesday evenings for three hours.

Subsequent to the tribal court's order of June 19th but prior to the order of August 24th, Stuart initiated a dissolution action in Beltrami County Court. At the time the petition was filed, both parties and the children resided on the Red Lake Indian Reservation. In the petition, Stuart sought "permanent care, custody and control" of Corey and Kristie, subject to reasonable visitation rights for Irene. Stuart also sought child support from Irene. Issues of property division were eliminated by stipulation of the parties prior to trial.

In late September 1984, after the tribal court awarded Stuart custody, Stuart and the children moved to New Mexico. Irene did not freely agree to the move, but the trial court was aware of the move and consented to it.

Trial commenced on October 30, 1984. At the time the trial began and up until sometime in December, Corey and Kristie remained in New Mexico. On December 12, the trial court granted Irene visitation from December 12 until December 26.

On December 18, the second day of trial, Stuart moved for a dismissal of child custody, support, and visitation matters because of the Indian Child Welfare Act, which Stuart argued vested exclusive jurisdiction over custody matters involving Indian children in the Red Lake Tribal Court. The trial court denied Stuart's motion, ruling that the Indian Child Welfare Act was inapplicable.

On December 26, 1984, the trial court awarded Irene temporary custody until February 1, 1985. By this time the children had returned from New Mexico. Also on December 26, while visiting her mother at Red Lake, Irene was served with the tribal court's custody order of September 13, 1984 granting Stuart temporary custody. Several hours thereafter, Irene and the children moved off the reservation for purposes of avoiding tribal court jurisdiction. By January 2, 1985, Irene and the children were living in Bemidji. On January 5, 1985, the trial court issued an order denying Stuart visitation from January 2 until February 1 "because adequate arrangements have not been made to assure that the children will not be removed to the Red Lake Indian Reservation during [Stuart's] exercise of his visitation privileges."

On April 24, 1985, the Beltrami County Court granted Irene the custody of Corey and Kristie, and awarded Stuart reasonable visitation. The trial court further awarded Irene child support and spousal maintenance. Stuart appeals, arguing that the trial court did not have subject matter jurisdiction to decide the custody matters and that comity and a need for uniform public policy require the trial court to give full faith and credit to the custody orders of the tribal court.

## ISSUES

1. Did the county court have subject matter jurisdiction over child custody matters between the parties and their children who at one time resided on the Red Lake Indian Reservation when the tribal code relinquished jurisdiction over domestic matters to the state courts and Stuart voluntarily invoked state court jurisdiction?

2. Do the principles of full faith and credit and comity require the trial court to honor the child custody orders of the tribal court?

## ANALYSIS

### Standard of Review

An appellate court is not bound by the ultimate legal conclusions of a trial court. *See Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 354 (Minn.1977). Thus, this court must determine whether the trial court correctly applied applicable law. *See A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

### I

Stuart Desjarlait argues that the state cannot exercise subject matter jurisdiction because: (1) state jurisdiction would be contrary to the established right of Indian tribes to regulate their internal and social relations; (2) state jurisdiction would result in a decrease of the authority of the Red Lake Tribal Court; (3) state jurisdiction would be contrary to the philosophy underlying the Uniform Child Custody Jurisdiction Act, Minn.Stat. §§ 518A.01–.25 (1984); and (4) state jurisdiction would undermine the public policy expressed in the Minnesota Indian Family Preservation Act, 1985 Minn.Laws ch. 111, §§ 1–8.

■ 1. Stuart Desjarlait's first argument is that the state courts of Minnesota

do not have jurisdiction to resolve child custody matters when the parties and their children are enrolled members of the Red Lake Band of Chippewa Indians and have resided on the Red Lake Indian Reservation. Stuart asserts that states have no authority to govern Indians within the boundaries of an Indian reservation. The Minnesota Supreme Court has recognized this principle, and has stated that "the State of Minnesota has no authority to govern the affairs of persons *within* the territorial boundaries of the Red Lake reservation except as specifically authorized to do so by Congress." *Red Lake Band of Chippewa Indians v. State*, 311 Minn. 241, 247, 248 N.W.2d 722, 726 (1976) (emphasis in original). *See also United States v. Wheeler*, 435 U.S. 313, 322, 98 S.Ct. 1079, 1085, 55 L.Ed.2d 303 (1978) (although Indian tribes are subject to ultimate federal control, they nonetheless remain a "separate people" and possess the power to regulate their internal and social relations); *State v. Porter*, 348 N.W.2d 411, 412 (Minn. Ct.App.1984) (Minnesota has no civil or criminal jurisdiction over Indians residing on an Indian reservation absent an express grant of jurisdiction from Congress).

While the above principle is well established, an aspect of this case makes application of the general rule inappropriate. Stuart voluntarily invoked the jurisdiction of the county court when he filed his petition for dissolution. Moreover, in the petition, Stuart expressly sought child custody and child support. Nowhere in the petition did Stuart even suggest that the county court lacked subject matter jurisdiction.

In deciding a similar case in which a custody dispute arose between a husband and wife who were both enrolled members of the Blackfeet Tribe, the Ninth Circuit Court of Appeals stated that "by *voluntarily* invoking the state court's jurisdiction for divorce purposes, the [parties] clearly submitted the question of their children's custody to the judgment of the Montana state courts." *United States ex rel. Cobell v. Cobell*, 503 F.2d 790, 795 (9th Cir.1974) (emphasis in original), *cert. denied*, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666

(1975). *See also In re Bertelson*, 617 P.2d 121, 125 (Mont.1980) (court noted that the parties voluntarily invoked state court jurisdiction to dissolve their marriage). Thus, we conclude that by voluntarily invoking the county court's jurisdiction for divorce purposes, Stuart clearly submitted the question of custody to the county court. In addition, Irene and the children have resided off the reservation since December 26, 1984, thereby submitting themselves to the authority of the state courts. *See Red Lake Band of Chippewa Indians v. State*, 311 Minn. 241, 247, 248 N.W.2d 722, 726 (1976).

■ 2. Stuart's second argument is that to permit the state to have jurisdiction decreases the authority of the Red Lake Tribal Court and leads to conflicting adjudications affecting the custody of children. Stuart claims that the Supreme Court decision of *Fisher v. District Court* controls on the custody issue before this court. In *Fisher*, the Court considered a custody issue that arose in the context of an adoption proceeding. *Fisher v. District Court*, 424 U.S. 382, 383–384, 96 S.Ct. 943, 944–945, 47 L.Ed.2d 106 (1976). An ordinance of the tribe provided the tribal court with jurisdiction to deal with adoptions. *Id.* at 384 n. 5, 96 S.Ct. at 945 n. 5. Because one of the parties did not defend the state court's jurisdiction on the ground that a "substantial part of the conduct supporting the adoption petition took place off the reservation," the Court characterized the proceeding as litigation arising on the reservation and concluded that the tribal court had exclusive jurisdiction. *Id.* at 389, 96 S.Ct. at 948.

Contrary to Stuart's contention that *Fisher* is clearly controlling, *Fisher* is distinguishable. Unlike the tribal code in *Fisher*, the Red Lake governing rules do not cover custody proceedings in the dissolution context. The Red Lake laws provide in part that "[i]n any actions handled by the Courts of the State of Minnesota or any other state *the Red Lake Court will uphold and enforce all decisions as to sup-*

*port, alimony, adoptions, etc.*" (Emphasis added.) In considering a case in which Indians who lived off the reservation filed for divorce in state court and jurisdiction became an issue, the Ninth Circuit stated as follows:

> [U]nlike the State of Montana, the jurisdiction of the Blackfeet Tribal Court is limited and does not extend to the full range of domestic relations incidents. Chapter 3 of the Blackfeet Tribal Law and Order Code explicitly disclaims jurisdiction over marriages, divorce and adoption. The Code defers to state law and state jurisdiction for proceedings in those areas. *We interpret this relinquishment of jurisdiction to encompass a surrender of jurisdiction over custody determinations incident to divorce actions as well.*

*United States ex rel. Cobell v. Cobell,* 503 F.2d 790, 795 (9th Cir.1974) (emphasis added; footnote omitted), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975). For this reason, as well as the fact that the parties voluntarily invoked the state court's jurisdiction when they filed for divorce, the court determined that the tribal court lacked jurisdiction to settle the custody issue. *Id.*

In this case, the Red Lake Tribe can be said to have relinquished jurisdiction over custody determinations incident to dissolution proceedings. Thus, state court jurisdiction would not lead to a decrease in tribal court authority and conflicting adjudications affecting the custody of children as Stuart argues in his brief.

■ 3. Stuart's third major argument is that under the Uniform Child Custody Jurisdiction Act (UCCJA) the county court lacked jurisdiction over the child custody issue. See Minn.Stat. §§ 518A.01–.25 (1984). According to Stuart, Irene's removal of the children from the reservation to escape the reach of the Red Lake Tribal Court and the trial court's revocation of Stuart's visitation rights for fear that he would take the children back to the reservation are the very results the state legislature sought to avoid in enacting the UCCJA.

The express purpose of the UCCJA is to avoid jurisdictional disputes between *states* in child custody matters. *See* Minn.Stat. § 518A.01, subd. 1 (1984). By definition, "'[s]tate' means any state, territory, or possession of the United States, the Commonwealth of Puerto Rico, and the District of Columbia." *Id.* § 518A.02(j). Thus, the UCCJA does not apply to jurisdictional disputes between a state court and a tribal court, and is inapplicable in this case. *See Malaterre v. Malaterre,* 293 N.W.2d 139, 144 (N.D.1980) (court refused to resolve a child custody issue involving a tribal court and a state court on the basis of the UCCJA, stating that the UCCJA "pertains to fact situations which involve jurisdictional disputes with sister states * * *").

■ 4. Stuart argues that the public policy expressed by the Minnesota Indian Family Preservation Act mandates that the court recognize the tribal court's jurisdiction in this case. The act provides that tribal courts have exclusive jurisdiction over "a child placement proceeding involving an Indian child" who resides on a reservation. *See* 1985 Minn. Laws ch. 111, § 5, subd. 1. Based on this provision, Stuart argues that "[t]he Indian Family Preservation Act is intended to cover dependency/neglect-type cases but [section 5, subd. 1] clearly indicates that *any order of a Tribal Court granting custody to a person or agency of an Indian Child who resided on the reservation* must be honored in State Court proceeding." (Emphasis in original.)

Stuart's argument is without merit for two reasons. First, in the definitional section of the act, "child placement proceeding" is defined in terms of adoption placement, involuntary foster care, preadoptive placement, and termination of parental rights. *See* 1985 Minn. Laws ch. 111, § 2, subd. 3. The act explicitly precludes from the act's coverage custody matters in dissolution proceedings by stating that "[t]he terms * * * *do not include a placement based upon an * * * award of custody in*

*a divorce proceeding to one of the parents. Id.* (emphasis added).

The Minnesota Indian Family Preservation Act is inapplicable for the second reason that the purpose of the act is to protect Indian families and cultural values under circumstances in which an Indian family is broken up. The Minnesota Act is based on the Indian Child Welfare Act of 1978, the purpose of which was to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by establishing minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes or institutions * * * *" H.R.Rep. 95–1386, 95th Cong., 2d Sess. 1, *reprinted in* 1978 U.S. Code Cong. & Ad. News 7530. Thus, the federal act "is not directed at disputes between Indian families regarding custody of Indian children; rather its intent is to preserve Indian culture [sic] values under circumstances in which an Indian child is placed in a foster home or other protective institution." *In re Bertelson,* 617 P.2d 121, 125 (Mont.1980). *See also A.B.M. v. M.H.,* 651 P.2d 1170, 1172–1173 (Alaska 1982). For these reasons, we conclude that the Minnesota Indian Family Preservation Act is inapplicable.

## II

Stuart argues that comity and the need for a uniform public policy require the state courts to give full faith and credit to custody orders of a tribal court affecting children within the tribal court's jurisdiction when the order is given.

■ The full faith and credit clause of the United States Constitution requires each state to give effect to the official acts of other states. *Nevada v. Hall,* 440 U.S. 410, 421, 99 S.Ct. 1182, 1188, 59 L.Ed.2d 416 (1979). "A judgment entered in one State must be respected in another provided that the first state had jurisdiction over the parties and the subject matter." *Id. See also Fuhrman v. United American Insurors,* 269 N.W.2d 842, 848 (Minn.1978).

In this case, the full faith and credit clause of the federal constitution is inapplicable because it expressly applies to matters between states, not to matters between tribal courts and states. *See* U.S. Const. art. IV, § 1. The North Dakota Supreme Court refused to bind a tribal court to a state court's modification by reason of the full faith and credit clause "because that federal constitutional provision is expressly applicable only between states" and Indian reservations are not states. *Malaterre v. Malaterre,* 293 N.W.2d 139, 144 (N.D.1980). In addition, the full faith and credit clause is inapplicable because, as established above, the tribal court relinquished jurisdiction over custody matters.

■ Stuart contends that the principle of comity mandates that state courts give recognition to tribal court orders. Comity is "[t]he principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect." *Black's Law Dictionary* 242 (5th ed.1979). Because the tribal court lacked subject matter jurisdiction, we conclude that the principle of comity has no application in this case. *See Malaterre,* 293 N.W.2d at 145.

Irene argues that before comity may be relied upon, it must be established that the foreign jurisdiction issued the decree or order under circumstances in which the parties were afforded due process. *See id.* In this case, the tribal court issued the order of May 25, 1984 without a hearing. The tribal court held a hearing before issuing the June 19 order, but neither party was represented by counsel. On August 24, the tribal court revoked Irene's visitation rights without a hearing and simply notified her of the order through the mails. Because of these tribal court actions, the parties were not afforded due process, and this constitutes a second reason for not relying on the principle of comity.

## DECISION

Because Stuart voluntarily invoked state court jurisdiction when he filed his petition for dissolution and because the tribal code relinquished jurisdiction over domestic matters to the state courts, the county court had subject matter jurisdiction over child custody matters of members of the Red Lake Band of Chippewa Indians. Principles of full faith and credit and comity do not require state courts to recognize a tribal custody order when the tribal court lacked subject matter jurisdiction and did not afford the parties due process.

Affirmed.