576 So.2d 1013 (1991)
James BARBRY, Plaintiff-Relator,
v.
Carol Turner DAUZAT, Defendant-Respondent.
No. W90-25.
Court of Appeal of Louisiana, Third Circuit.
February 26, 1991.
Writ Denied April 26, 1991.
*1014 Donald Juneau, Hammond, for plaintiff-applicant.
Charles A. Riddle, III, Marksville, for defendant-respondent.
Before DOUCET, LABORDE and KING, JJ.
KING, Judge.
The issues presented by this writ are whether a state district court has subject matter jurisdiction and personal jurisdiction over the parties in this child custody proceeding.
James Dean Barbry (hereinafter relator) and Carol Turner Dauzat (hereinafter respondent) became involved in litigation in a Louisiana District Court over visitation privileges with their minor child, Jamie Marie Barbry (hereinafter the minor child). Relator filed a motion to dismiss or, alternatively, to transfer this child custody proceeding, contending that the district court lacked both subject matter and personal jurisdiction. Relator urged his motion based on the fact that both he and the minor child were enrolled members of the Tunica-Biloxi Indian Tribe and domiciled and residing on the Tunica-Biloxi Indian Reservation (hereinafter the Reservation) in Avoyelles Parish, Louisiana. Relator contends that the Tribal Council of the Tunica-Biloxi Indian Tribe (hereinafter the Tribal Council) has exclusive subject matter jurisdiction over this child custody proceeding and exclusive personal jurisdiction over him and the minor child. The district court denied plaintiff's motion and a formal written judgment was signed. The district court stayed further action in this child custody proceeding pending a decision on relator's application for supervisory writs to this court. This court granted the writ, ordered the record sent to the appellate court, and ordered the matter docketed for briefing and argument. We now issue a written opinion affirming the decision of the trial court, recall the writ, and remand the matter to the trial court for further proceedings.

FACTS
Relator, James Dean Barbry, and respondent, Carol Turner Dauzat, were married in Avoyelles Parish, Louisiana. The minor child, Jamie Marie Barbry, was born of the marriage on September 13, 1980. The last *1015 matrimonial domicile of relator, respondent, and the minor child was in Avoyelles Parish, Louisiana. The matrimonial domicile was never located on the Reservation in Avoyelles Parish, Louisiana. After the parties' divorce, relator established his domicile and residence on the Reservation. When relator acquired legal custody of the minor child, he moved the minor child into his home on the Reservation. Relator, respondent, and the minor child are all presently domiciled in Avoyelles Parish, Louisiana, with relator and the minor child now living on the Reservation in Avoyelles Parish, Louisiana. Relator filed a suit for divorce against respondent in the Twelfth Judicial District Court for Avoyelles Parish, Louisiana in the suit bearing Number 82-2889 on the Docket of that Court (hereinafter the first suit). On January 4, 1984, a judgment of divorce was rendered in the first suit with the judgment also awarding the sole permanent care, custody, and control of the minor child to respondent subject to specific visitation privileges by and with relator. Relator then filed another suit against respondent seeking to change custody of the minor child in the Twelfth Judicial District Court for Avoyelles Parish, Louisiana in the suit bearing Number 84-6190 on the Docket of that Court (hereinafter the second suit). On April 8, 1985, a judgment was rendered in the second suit, granting relator the sole permanent care, custody, and control of the minor child subject to specific visitation privileges by and with respondent. Relator then took the minor child into his home on the Reservation. Respondent subsequently married Daniel Dauzat. On September 2, 1987, relator filed a rule against respondent in the second suit seeking to modify and restrict the visitation privileges previously given to respondent in the judgment rendered in the second suit on April 8, 1985. This rule was subsequently heard and, on October 9, 1987, a judgment was read and signed modifying the visitation privileges given to respondent. On December 13, 1987, the Tunica-Biloxi Tribal Council adopted Resolution Number 25-87 which made the minor child a ward of the Tribal Council, vested custody of the minor child with relator, and requested that relator and respondent attempt to agree on visitation privileges for respondent and, if that could not be accomplished, provided that the Tribal Council would hold a hearing to decide "the extent of the visitation privileges" of respondent with the minor child. Relator then filed in the second suit, on December 17, 1987, a Motion To Dismiss Or, Alternatively, To Transfer the custody proceeding on the basis that relator and the minor child were then enrolled as members of the Tunica-Biloxi Tribe, and were domiciled and residing on the Reservation in Avoyelles Parish, Louisiana. Relator contended that, because of this and under the provisions of 25 U.S.C. § 1901 et seq., the Indian Child Welfare Act (hereinafter ICWA), the district court had been divested of subject matter jurisdiction over the proceeding in the second suit. This motion was ruled on and denied by the trial court, without a hearing, when it rendered written reasons for judgment on the motion on December 8, 1989. This ruling on relator's motion in the second suit is the subject of this writ.
On September 18, 1989, respondent filed in the first suit a rule against relator to enforce and modify visitation with the minor child. On October 13, 1989, the original date scheduled for the hearing of the rule in the first suit, the hearing date was refixed for hearing on November 3, 1989, and the parties stipulated to interim provisional visitation privileges pending the November 3, 1989 hearing. On October 13, 1989, an order was signed granting respondent the stipulated interim visitation privileges. Pending the hearing on the rule in the first suit, which was fixed to be heard on November 3, 1989, relator formally requested that the Tribal Council hold a hearing on the visitation privileges of respondent for her visitation with the minor child. Respondent's rule in the first suit was heard on November 3, 1989, at which time the district court entered, on stipulation of the parties, a consent judgment of visitation privileges for respondent. A formal written judgment, confirming these stipulated visitation privileges for respondent, was signed in the first suit on December 1, 1989. On November 18, 1989, after the *1016 hearing of respondent's rule in the first suit on November 3, 1989, but before a judgment on the rule was signed, the Tribal Council held a hearing and gave respondent limited visitation privileges with the minor child at the Tribal Community Center on the reservation with the provision that the minor child could not be removed from the reservation. These visitation privileges for respondent, granted by the Tribal Council, differed from those previously stipulated to by the parties and ordered by the judgment of the court signed on December 1, 1989, in the first suit. Relator then filed in the first suit a motion, which was a renewal of his same motion filed on December 18, 1987 in the second suit, to dismiss the suit or to transfer it to the Tribal Council. This motion was also ruled on and denied by the trial court, without a hearing, when it rendered written reasons for judgment on the motion on December 8, 1989. This ruling on the same motion in the first suit is also the subject of this writ. On December 13, 1989, respondent filed against relator a Rule To Show Cause For Contempt in the first suit which was set for hearing on December 22, 1989. In response to this, relator filed a motion to vacate the rule to show cause for contempt and a motion for reconsideration of the denial of the motions to dismiss in the first and second suits. The rule for contempt and the motion for reconsideration of the motion to dismiss were fixed for hearing on December 22, 1989. At this hearing, the trial court consolidated the first suit, Number 82-2889, and the second suit, Number 84-6190, denied relator's motion for reconsideration of the motion to dismiss, and denied relator's motion to vacate the rule to show cause for contempt. The trial court stayed execution of the consent judgment of visitation in the first suit, dated December 1, 1989, giving respondent specific visitation privileges with the minor child, and also stayed any further proceedings on respondent's rule to show cause for contempt until consideration by this Court of relator's application for supervisory writs. Relator then gave notice and sought supervisory writs from this Court on the trial court's denial of his motions to dismiss or, alternatively, to transfer the first and second suits to the Tribal Council. We granted the writ, ordered the record sent to the appellate court, and ordered the matter docketed for the filing of briefs and oral argument.
Relator contends that the trial court erred in denying his Motion To Dismiss Or, Alternatively, To Transfer The Proceeding To The Tribal Council, filed in both the first and second suits which have been consolidated, for lack of jurisdiction under the provisions of the Indian Child Welfare Act, 25 U.S.C. § 1901, et seq., or, alternatively, for lack of subject matter jurisdiction and personal jurisdiction over relator and the minor child since they are both Indians not subject to the jurisdiction of the Louisiana courts.

LAW
Jurisdiction in Louisiana has been defined as the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties and to grant the relief to which they are entitled. La.C.C.P. Art. 1. In Louisiana, jurisdiction has been traditionally subdivided into "jurisdiction ratione materiae", or jurisdiction over the subject matter, and "jurisdiction ratione personae", or jurisdiction over the person. This classification was patterned upon the "competence ratione materiae" and "competence ratione personae" of French procedure. These twin concepts of Louisiana procedure correspond closely with the "jurisdiction over the subject matter" and "venue" of Anglo-American law. Comment, Jurisdiction, Ratione Materiae et Personae in Louisiana, 12 La.Law Review 210 (1951). These concepts have been codified in the Louisiana Code of Civil Procedure as jurisdiction over subject matter, La.C.C.P. Art. 2, and jurisdiction over the person, La.C. C.P. Art. 6. Jurisdiction of the court over the subject matter of an action or proceeding cannot be conferred by consent of the parties, La.C.C.P. Art. 3, while jurisdiction over the person can be conferred by consent of the parties, La.C.C.P. Art. 7. Thus, under Louisiana law, jurisdiction over the *1017 person can be validly conferred by consent, but jurisdiction over the subject matter cannot be validly conferred by consent. Any judgment rendered by a court without jurisdiction over the subject matter or proceeding is void. La.C.C.P. Art. 3. With these Louisiana legal concepts and definitions of jurisdiction in mind, we review relator's arguments in support of his motion.
Relator, by his Motion To Dismiss Or Alternatively, To Transfer the Proceedings contends that the courts of Louisiana do not have subject matter jurisdiction and personal jurisdiction over himself, the minor child, and the pending child custody and contempt proceeding.
Relator first contends that the district court lacks both subject matter and personal jurisdiction because of the provisions of the Indian Child Welfare Act, 25 U.S.C. § 1901, et seq. The trial court did not hold a hearing on the motion but rendered written reasons for denying the motion on December 8, 1989.
In denying relator's motion, the trial court stated:
"For purposes of this motion only (and reserving to defendant in rule the right to contradict this should it become an issue in future proceedings) the court will assume that Jamie Barbry [the minor child] is an Indian child and that she is domiciled on the Tunica-Biloxi Reservation. These assumptions of fact for purposes of the present motion render a hearing unnecessary as there is only a question of law remaining.
* * * * * *
The current proceeding does not involve foster care placement, nor termination of parental rights, nor pre-adoptive placement nor adoptive placement. It does not even involve state court custody because custody has been previously adjudicated in favor of the Indian father, James Barbry, pursuant to his own decision to apply to this court for custody. The only issue in this proceeding is visitation under the terms of a state court judgment....
The determination of custody as between parents was never removed from state court jurisdiction. For example, in Malaterre v. Malaterre, 293 N.W.2d 139 (N.D.1980) the court held specifically that the term `child custody proceeding' in ICWA shall not include placement based upon an award, in a divorce proceeding, of custody to one of the parents, and the act does not apply to the award of custody of a child or children to one or the other parent as a result of a divorce proceeding. That holding is totally consistent with the definition of `child custody proceeding' in the ICWA has set forth above. The issue of visitation is even further removed from the scope of the act, [ICWA] especially considering the fact that the Indian parents [relator] successfully acquired custody in the present case in a state court proceeding which he chose to file.
* * * * * *
For the foregoing reasons, the Motion to Transfer or Dismiss is denied without hearing."
The policy of the ICWA was shaped by the very nature of the problem Congress was seeking to solve. After extensive hearings on the topic of Indian child welfare, Congress determined that "[t]he wholesale separation of Indian children from their families is perhaps the most tragic and destructive aspect of American Indian life today." H.R.Rep. No. 1386, 95th Cong., 2d Sess. 9, Reprinted in 1978 U.S.Code Cong. & Admin. News 7530, 7531. The Congressional finding and declaration of policy, set out at the beginning of the ICWA, set the tone for the Act. 25 U.S.C. §§ 1901 and 1902.
Procedurally, the ICWA provides Indian Tribal Courts with exclusive jurisdiction over any child welfare proceeding involving an Indian child,[1] by stating that:

*1018 "An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child." (Emphasis supplied.) 25 U.S.C. § 1911(a) (1982).
However, the ICWA's protection explicitly excludes custody disputes between divorcing parents where such jurisdiction is vested in the state court by existing federal law. The ICWA specifically provides in 25 U.S.C. § 1903(1) that:
"(1) `Child custody proceeding' shall mean and include
* * * * * *

Such term or terms shall not include a placement based upon an act which, if committed by an adult, would be deemed a crime or upon an award, in a divorce proceeding, of custody to one of the parents." (Emphasis supplied.) 25 U.S.C. § 1903(1) (1982).
Thus, the ICWA itself, which is federal law, specifically provides that a child custody proceeding within the context of the ICWA does not include a placement or award of child custody to one of the parents of an Indian child, whether such custody be to the Indian or non-Indian parent, if such placement or award of child custody is based upon an award of custody in a divorce proceeding.
The trial court found that the ICWA was inapplicable to these particular child custody proceedings as a matter of law even assuming the minor child was an Indian child. The trial judge reasoned that relator had obtained custody of the minor child as a result of a state court divorce proceeding and that the issue before the court did not involve custody, but only involved visitation privileges to be given to respondent under the terms of a custody order rendered as a result of a state court divorce judgment. The ICWA specifically excludes custody proceedings based upon an award of custody to one of the parents in a divorce proceeding. 25 U.S.C. § 1911(a); See, Malaterre v. Malaterre, 293 N.W.2d 139 (N.D. 1980). The trial court thus reasoned that this exclusion under the provisions of ICWA was applicable to these consolidated proceedings and that, for this reason, the Louisiana district court had subject matter jurisdiction over this child custody proceeding. The trial court also found it had personal jurisdiction over relator and the minor child since they were before the court. We do not find that this reasoning is manifestly in error or clearly wrong.
The Louisiana district court has jurisdiction over the subject matter, as it has the legal power and authority to hear and determine child custody and visitation matters, La. Const.1974, Art. 5, § 16(A); La.C.C.P. Art. 2, and has jurisdiction over the status of this proceeding, which is to fix specific visitation privileges as a result of a custody judgment involving the minor child rendered in the earlier divorce proceeding, as the minor child is domiciled in this state. La.C.C.P. Art. 10(5). Jurisdiction of the Louisiana District Court had attached by the award of custody, before either relator or the minor child moved to the Reservation, and it continues for a change or modification of that award in the future. Gowins v. Gowins, 466 So.2d 32 (La.1985); Morrison v. Morrison, 316 So.2d 453 (La.App. 3 Cir.1975), writ den., 322 So.2d 772 (La.1975), and cases cited therein. Where jurisdiction of the person or the res has once attached, it is not defeated by removal of the person or res beyond the territorial jurisdiction of the court. DeFatta v. DeFatta, 352 So.2d 287 (La.App. 2 Cir.1977), and cases cited therein. The district court also has personal jurisdiction over relator, regardless of whether or not he is a citizen of a sovereign Indian nation, because of his submission to the exercise of jurisdiction over him personally by the court by his implied waiver of objection thereto, La.C.C.P. Art. 6(3), by his failure to timely file a declinatory exception to the court's lack of jurisdiction over him, La.C.C.P. Art. 925, and by impliedly *1019 waiving such objection by making a general appearance, La.C.C.P. Art. 7. For these reasons, we find that the trial court was correct in denying relator's Motion to Dismiss and/or Alternatively to Transfer based on lack of subject matter jurisdiction and personal jurisdiction over relator and the minor child because of the provisions of the ICWA.
However, the trial court, in its written reasons for denying relator's motions, did not reach the second issue presented by relator's motions that the suits should be dismissed and/or transferred to the Tribal Council for lack of subject matter jurisdiction and personal jurisdiction over relator and the minor child since they are both Indians domiciled and residing on their tribal reservation and not subject to the jurisdiction of the Louisiana courts. Relator argues that since he and the minor child are citizens of a sovereign nation and are domiciled and residing in a sovereign nation the state district court has no jurisdiction over them or, if it ever had jurisdiction, such subject matter and personal jurisdiction has been divested by the fact that relator and the minor child are now domiciled and residing in a sovereign nation.
Indian tribes in the United States are a jurisdictional anamoly. They are neither a state nor foreign nations, yet they possess a sovereignty that makes them generally independent of state or local governmental regulation. Moreover, they are subject to constitutional limitations on state actions. On the other hand, tribal "sovereignty", although predating the United States constitution, can be divested by the federal government or by the Indian tribe itself. In 1953, Congress enacted Public Law 53-280 (hereinafter P.L. 280). P.L. 280 transferred civil and criminal jurisdiction over Indian lands from federal to state governments in five states, and allowed for the future assumption of jurisdiction by all other states over Indian lands in these states. Title IV of the Indian Civil Rights Act provided that states may extend jurisdiction over Indian lands only with the consent of the affected tribes. Act of April 11, 1968, Public Law No. 90-284, §§ 401, 402, 406, 82 Statute 78-80, (Codified at 25 U.S.C. §§ 1321, 1322, 1326 (1982)). We note that the record is devoid of any evidence that the Tunica-Biloxi Indians, in accordance with this law, have consented for Louisiana courts to exercise civil jurisdiction over their members who are domiciled and residing on their tribal reservation. The potential impact of P.L. 280 in the child custody context is significant. The statute provides the exclusive method for an assumption of a state court of authority over civil causes of action arising on an Indian reservation to which Indians are parties. On the other hand, a custody dispute involving at least one non-Indian party living off the reservation, and a child with contacts both on and off the reservation, would seem to fall outside the strict limitations of P.L. 280. Such a case would not necessarily "arise in the areas of Indian country" as required by the statute. Thus, while P.L. 280 clearly dictates tribal or state court jurisdiction in particular circumstances, the law does not adequately resolve jurisdictional disputes in many of the borderline cases.
Without federal legislative authorization, the Tribal Council's assertion of jurisdiction rests on tenuous grounds. The jurisdiction of tribal courts depends on a web of interrelated factors. Federal statutory law may explicitly define tribal or state court jurisdiction, as does the IWCA at 25 U.S.C. § 1901, et seq. Treaties between the particular tribe and the federal government may grant or withdraw whole categories of jurisdiction.[2] We note that the treaty of the Tunica-Biloxi Indians and the United States of America is not a part of this record and, for this reason, no determination can be made from the record of what, if any, jurisdiction is conferred or denied to the federal or state government by treaty.
*1020 The tribe's own judicial code or constitution is another formal source of authority. Until recently, most tribal codes followed a model set up by the Bureau of Indian Affairs and excluded jurisdiction in the tribal courts over cases in which non-Indian parties were defendants.[3] We note that the judicial code or constitution of the Tunica-Biloxi Indians is not a part of this record and, for that reason, no determination can be made from the record as to the Tribal Council's own authority. In any event, Indian tribes typically have not granted their tribal courts such expansive jurisdiction.[4]
Whether the tribal membership of one party can justify the assertion of jurisdiction by the Tribal Council, in face of objections from the non-Indian, is a question which tests the limits of the Doctrine of Inherent Sovereignty. Significantly, Congress has not authorized such tribal authority in the context of child-custody disputes under the ICWA. Under 25 U.S.C. § 1911(b) (1982), a custody proceeding involving an Indian child who is not domiciled or residing on a reservation may be transferred to the tribe's jurisdiction, but not over the objection of either parent. Thus, where the child lives off the reservation, one parent can block tribal jurisdiction under the ICWA.
As in many child custody battles, parents of Indian children tend to dispute the authority of the forum that renders an unfavorable decision and to invoke the jurisdiction of an alternative forum to obtain a favorable ruling. The jurisdictional maze described above provides fuel for such tactics. This is exactly what has happened in this matter.
Two United States Supreme Court decisions shed light on the operation of the tribal sovereignty, peremption and state interest principles in custody disputes. In Fisher v. District Court, 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976), the Court established what is sometimes cited as a rule of exclusive tribal jurisdiction over custody disputes involving an Indian child. The case involved a custody dispute between a foster mother and the biological mother. All parties were Indians residing on the Northern Cheyenne reservation. While a neglect proceeding against the biological mother was still pending before the Tribal Court, the Indian foster mother brought an action for adoption in the Montana State Court. The question of the state court's authority vel non became the focus. In holding that the Tribal Court had exclusive jurisdiction, the United States Supreme Court drew upon several theories. The court explained that the state court involvement in the adoption dispute would plainly interfere with the powers of self-government of the tribe. The Court further reasoned that state court involvement would create a substantial risk of conflicting adjudications affecting the custody of the child and would cause a corresponding decline in the authority of the Tribal Court. In dicta, the Court noted that residence of the parties should probably be the central jurisdictional fact in adoption cases instead of the location of particular events of marginal reference. Finally, falling back on a peremption analysis, the Court emphasized that federal law authorized the tribal ordinance conferring jurisdiction on the Tribal Court and that such overriding federal policy was adequate to defeat the state court's authority. In Decoteau v. District Country Court, 420 U.S. 425, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1975), the Supreme Court faced the question of whether a state court had jurisdiction over a child neglect proceeding involving an Indian child. The state court assumed that it had authority to entertain the case because 50% of the *1021 mother's allegedly wrongful conduct occurred on non-Indian lands. After resolving the technical issue of the status of the lands in question, the Supreme Court affirmed the state court's exercise of jurisdiction, determining that the reservation lands in question had been returned to the public domain. The other side of Decoteau is that, had the court decided that the territory where the mother's offending conduct took place remained under Indian domain, the state court would have been stripped of authority to entertain the child neglect proceeding. Together, Fisher and Decoteau may be read to mean that residence of the Indian child on the reservation is determinative of the Tribal Court's jurisdiction unless significant conduct or events have occurred outside Indian lands.
Numerous state courts have confronted different facts involving Indian children born of Indian parents or of one Indian and one non-Indian parent, and where the residence of the child is with either the Indian or non-Indian parent and is either on or off the reservation. Resolution of conflicting jurisdictional disputes in these various factual situations reveal divergent theories of jurisdiction. The state courts have figured into the jurisdictional equation such varied factors as physical presence of the parties, domicile of the child, and cultural identity of the child.
Like their state counterparts, tribal courts have also grappled with jurisdictional disputes involving Indian children, both in the context of competing claims for custody of an Indian child between Indian parents or one Indian parent and one non-Indian parent, and where the parties were residing on and off the reservation. Although few tribes have implemented a systematic reporting system, the Indian Law Reporter, a publication of the American Indian Lawyer Training Program, Inc., now publishes selected tribal court decisions on a monthly basis. In general, the decisions involving jurisdictional disputes in child custody cases evidence a Tribal Court concern for tribal sovereignty, cultural survival, and the welfare of the Indian child, but the jurisdictional tenents underlying the decisions, like state courts, vary in their approaches to the jurisdictional questions.
However, a determination of whether the tribal or state district court has jurisdiction over the subject matter and person of the minor child, because he is an alleged member of the Tunica-Biloxi Indian Tribe and is domiciled and residing on the Reservation, would first depend on whether or not the minor child is an Indian child. We note that the trial court specifically refrained from determining whether the minor child, Jamie Marie Barbry, was an Indian child and, only for the limited purpose of ruling on the portion of relator's motion under the ICWA, assumed the minor child was an Indian child while specifically reserving a judicial determination of whether the minor child was in fact an Indian child. We find, for the purposes of ruling on relator's alternative contention that the state court lacks jurisdiction, because relator and the minor child are Indians, who are citizens of a sovereign nation, residing on the Reservation, which is a sovereign nation, that we must make such a determination.
The evidence in the record reveals that relator is of mixed ancestry, his father being a Tunica-Biloxi Indian and his mother a Caucasian woman. The evidence in the record also shows that the minor child is issue of the marriage of relator, being a person of one-half Indian ancestry, and of respondent, who is a Caucasian woman. The relator is therefore one-half Tunica-Biloxi Indian and one-half Caucasian by ancestry. The minor child is therefore one-quarter Tunica-Biloxi Indian and three-quarter Caucasian by ancestry.
Over the years, there has been considerable discussion as to who ought to be considered an Indian within the purview of the laws of the United States. Under the civil law, the child follows the condition of the mother. Thus, applying this civil law rule, we find that a child born of a Caucasian woman by an Indian father would be considered a child of the Caucasian race as the condition of the mother, and not the quantum of the Indian ancestry of the child, determines the condition of the offspring. *1022 This rule is expressed in the civil law maxim: "Partus sequitur ventrem." The civil law rule of partus sequitur ventrem generally obtains in this country and has been used to determine whether or not a child is an Indian child. See, U.S. v. Sanders, 27 Fed. 951 (Case Number 16,220). Federal statutory law involving tribal rights of Indian children also follows this civil law maxim. Thus, if the mother is an Indian woman, her offspring must be considered Indian within the meaning of the law, even though the father is a non-Indian. See, 25 U.S.C. 184 which provides for tribal rights of children born of marriages between non-Indian men and Indian women. Conversely, we note that the Federal statutory law does not provide for tribal rights of children born of marriages of an Indian man and a Caucasian woman. Presumably, the child has none. This civil law rule is found in Justinian's Institutes, Book 1, Title IV, and derived from the rule of the civil law that one born of a free mother was free, although the father was a slave; and so on the other hand, if the mother was a slave, the offspring partook of her condition. Scott, Volume I, The Civil Law, at page 9, the Enactments of Justinian, Title IV, (AMS Edition 1973). This rule in the Code of Justinian was in turn derived from earlier Roman Law. See, Scott, Volume I, The Civil Law, at page 228, The Rules of Ulpian, Title V(9) (AMS Edition 1973); Scott, Volume I, The Civil Law, at page 94, The Institutes of Gaius, First Commentary, Title VII(86) (AMS Edition 1973).
For these reasons, we determine that the minor child is a Caucasian child and not an Indian child. Persons of more white than Indian blood have been held to be white under the laws of other states. See, e.g., Delane v. Baker, 12 Ohio 237; Jeffries v. Ankeny, 11 Ohio 372. Therefore, since the minor child is a Caucasian child and is within the territorial jurisdiction of the state district court, even though domiciled and residing on the Reservation, which is also within the territorial jurisdiction of the state district court, we find that the state district court may properly exercise subject matter jurisdiction and personal jurisdiction over the minor child. The Louisiana district court has subject matter jurisdiction, as it has the legal power and authority to hear and determine child custody and visitation matters, La. Const. Art. 5, § 16(A); La.C.C.P. Art. 2, and jurisdiction over the status of the proceeding, which is to fix specific visitation privileges as a result of a custody judgment involving the minor child rendered in the earlier divorce proceeding, as the minor child is a citizen of and presently domiciled and residing in this state, La.C.C.P. Art. 10(5). The Louisiana district court has subject matter and personal jurisdiction over the minor child, which is a Caucasian child and not an Indian child, even though the minor child is physically present on the Reservation.
Relator argues that he is not subject either to the subject matter jurisdiction or personal jurisdiction of the Louisiana district court since he is an Indian domiciled and residing on the Reservation. Irrespective of whether relator himself is considered an Indian or Caucasian, the Louisiana district court has subject matter jurisdiction and jurisdiction over the status of the proceeding and personal jurisdiction over the minor child for the reasons set forth above. For these reasons, when relator submitted himself personally to the jurisdiction of the court, by not filing a declinatory objection and making a general appearance, and instituting the divorce and custody suits (the first and second suits) in state district court, we hold that the Louisiana district court has obtained personal jurisdiction over him to enforce its orders and decrees. Even if it is considered that relator has left the territorial jurisdiction of the state district court, by moving onto the Reservation after originally instituting these suits, personal jurisdiction of the Louisiana district court over him is not necessary. The clear consensus today is that personal jurisdiction over an absent parent is not essential to a court's power to issue a binding decree in child custody cases.[5] Louisiana courts follow the rule of continuing jurisdiction in child custody *1023 cases and retain the power to enforce their orders and decrees over the non-resident parent. When a judicial proceeding is begun (here the first and second suits) in a Louisiana district court with jurisdiction over the subject matter and person of the parties concerned, it is within the power of the Louisiana district court to bind the parties by every subsequent order in the cause even though a party later becomes a non-resident. See, Gowins v. Gowins, supra; Imperial v. Hardy, 302 So.2d 5 (La.1974); Webb v. Webb, 357 So.2d 1288 (La.App. 3 Cir.1978); DeFatta v. DeFatta, supra. The concept of continuing jurisdiction also applies to any additional proceeding which is an essential concomitant of the original proceeding, R. Casad, Jurisdiction in Civil Actions § 1.08 (1983), such as modification of a child custody or visitation judgment.
A court possesses inherently all the power necessary for the exercise of its jurisdiction even though not granted expressly by law. La.C.C. Art. 191. This inherent power of the court includes the power to punish by contempt sanctions the failure to abide by its lawful orders and judgments. We find that the state district court has the lawful and inherent power and authority to enforce its orders concerning the minor child against the person of relator.
For these reasons, we affirm the judgment of the trial court, recall the writ previously issued, and remand the consolidated suits to the district court for further proceedings. All costs of these proceedings are taxed to relator.
JUDGMENT OF TRIAL COURT AFFIRMED; WRIT RECALLED AND CASES REMANDED FOR FURTHER PROCEEDINGS.
LABORDE, J., concurs in the result.
NOTES
[1] The Indian Child Welfare Act defines "Indian child" to mean any unmarried minor who is either a member of a federally recognized Indian tribe or who is eligible for membership and is the biological child of a member of a tribe. 25 U.S.C. § 1903(4) (1982).
[2] Most treaties do not explicitly address questions of civil jurisdiction, although a few assure that state law will not apply to tribal members. See, e.g., Treaty with the Cherokees, 7 Statute 311 (1828); See generally, F. Cohen, Handbook of Federal Indian Law, at page 68. Many treaties, on the other hand, contain specific language regarding tribal jurisdiction over criminal actions. See, e.g., Treaty with the Choctaws, Art. VI, 7 Statute 333, 334 (1830).
[3] Under 25 C.F.R. § 11.22 (1988) setting forth the Bureau of Indian Affairs' Code for Courts of Indian Offenses, jurisdiction exists over actions against Indian defendants but not actions against non-Indian defendants except by stipulation of the parties. Apparently, most tribal codes copied that model. See National American Indian Court Judges Association, Indian Courts and the Future, pages 47-48 (1978).
[4] Tribal codes modeled after the jurisdictional provisions of the Court of Indian Offenses have generally limited their jurisdiction to civil actions against Indian defendants. See, supra, footnote (3).
[5] See generally, H. Clark, The Law of Domestic Relations in the United States (1988).